BROCK v. POOR et al.   (Nos. 6960, 6961.)

(Supreme Court, Appellate Division, First Department.   May 7, 1915.)

1. CORPORATIONS ☜207—SUIT BY STOCKHOLDER—CAPACITY TO SUE—COMPLAINT.

Where the agreement was attached to the complaint in such case and made a part thereof, and a consideration of all the allegations of the complaint, excluding that which was mere surplusage, showed that the suit was brought on behalf of all stockholders who acquired rights under the agreement, the suit was not derivative and brought in the right of the corporation, but was representative in that it was brought by plaintiff on behalf of himself · and others similarily situated; and the complaint was therefore not demurrable for want of legal capacity in plaintiff to sue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 797–805; Dec. Dig. ☜207.]

2. CORPORATIONS ☜210—ACTION BY STOCKHOLDER—PETITION FOR ACCOUNTING—SUFFICIENCY AGAINST DEMURRER—DEFECT OF PARTIES.

Where the complaint in such case sufficiently alleged that a great number of stockholders of the corporation, and persons who had succeeded to their rights, occupied a similar position with respect to such agreement to that occupied by plaintiff, who, if he were entitled to an accounting, would be entitled to like relief, and it clearly appeared that the design was to plead a single cause of action for breach of the trust and not to plead a cause of action in the right of the corporation, and also alleged that the defendants by fraudulent and concerted action had appropriated to themselves valuable property of the corporation in fraud of the rights of stockholders, who were parties to the agreement, and that all the debts of the corporation had been paid, it was not demurrable for defect of parties plaintiff, in that the allegations were insufficient, under Code Civ. Proc. § 448, providing when parties united in interest may be joined as plaintiff, to authorize the suit in the right of all such stockholders, or in that the number of stockhilders was not stated, and was not shown that it would be impracticable to bring them in, or that the question at issue was for the general interest of all.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 808–813; Dec. Dig. ☜210.]

3. TRUSTS ☜231—TRUSTEES—DUTIES—INDIVIDUAL PROFIT.

A trustee must act in good faith and not use his trusteeship for his individual advantage, benefit, or profit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 330–335; Dec. Dig. ☜231.]

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PLEADING &#8658;193—COMPLAINT—SUFFICIENCY—RELIEF.

That the plaintiff, in a suit in equity, is not entitled to all the relief prayed for, does not render the complaint demurrable; a complaint being sufficient as against the demurrer if it states facts which, if established, will entitle plaintiff to some relief.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 425, 428–435, 437–443; Dec. Dig. &#8658;193.]

5. ACTION &#8658;50—PARTIES INVOLVED—DIFFERENT RELIEF.

The plaintiff in a suit in equity need not show a right to the same relief against all the defendants.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. &#8658;50.]

6. CORPORATIONS &#8658;204—TRANSFER OF PROPERTY—ESTOPPEL—ACCEPTANCE OF BENEFITS.

Where a stockholder accepted his proportionate share of the stock of another corporation, for which corporate property was transferred, pursuant to a resolution passed at a stockholders' meeting, he was estopped to question the legality of the transaction, though he had no notice of such meeting.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 783–790; Dec. Dig. &#8658;204.]

7. CORPORATIONS &#8658;375—TRANSFER OF PROPERTY—VALIDITY OF STATUTE.

The enactment of Stock Corporation Law (Laws 1893, c. 638) § 33, as amended by Laws 1901, c. 130, authorizing the transfer of a corporation's property and franchise to another corporation, was within the legislative power.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1525–1529; Dec. Dig. &#8658;375.]

8. CORPORATIONS &#8658;204—SUIT FOR ACCOUNTING—VIOLATION OF TRUST—DEFENSE.

That a corporation, whose franchise and property had been transferred to another corporation, had not been formally dissolved, constituted no defense to a suit by a stockholder, on behalf of himself and other stockholders similarly situated, for an accounting against persons who, in violation of a trust imposed upon them, had made secret profits out of transactions connected with corporate property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 783–790; Dec. Dig. &#8658;204.]

Appeal from Special Term, New York County.

Action by Charles Brock against Ruel W. Poor and others. From an order sustaining separate demurrers of defendants Poor and Bennett, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Burt D. Whedon, of New York City, for appellant.

Thomas D. Adams, of New York City (Charles A. Brodek and Edgar J. Nathan, both of New York City, on the brief), for respondents.

LAUGHLIN, J. On the 29th day of November, 1904, the plaintiff was a stockholder of the defendant corporation. An agreement in writing of that date was made between him and other stockholders of the company and the defendants Poor and Bennett, as trustees. The plaintiff brings this action, not only in his own behalf, but also in be-

&#8658;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

half of all other stockholders who became parties to said agreement or succeeded to the rights of parties thereto, to compel an accounting by the trustees with respect to acts under and by virtue of said agreement and in connection therewith, alleged to have been in excess of their authority and in violation of their duty, and by the defendant Stephens, who is alleged to have conspired and co-operated with them in the acts of which complaint is made.

The decision of the demurrer requires that the issues tendered by the complaint be quite fully stated; but in setting them forth we merely state the facts alleged and for the purpose of presenting certain legal questions admitted by the demurrer, and, of course, it is not to be inferred that the charges have been proved.

It is alleged or shown by the contract, which is made part of the complaint, that the defendant corporation is a domestic corporation, having 1,500 shares of first preferred, 4,500 shares of second preferred, and 19,000 of common stock; that in November, 1903, it owed $300,-000 on promissory notes, held by various banks, and, among others, the Garfield National Bank, the American Exchange National Bank, and the National Park Bank, made or indorsed by it, which it was unable to pay, and that thereupon said banks appointed "a creditors' committee," consisting of the defendant Poor, who was president of said Garfield Bank, the defendant Bennett, who was assistant cashier of said American Exchange Bank, and one Van Cleaf, who was vice president of the National Park Bank, for the purpose of preventing legal proceedings to recover said indebtedness and of enabling the committee to direct the affairs of the company until said indebtedness was paid or satisfactorily secured; that Van Cleaf resigned and his successor also resigned, and no other successor was appointed; that in November, 1904, as a condition of the reissue and extension of said notes, and of further financial assistance, said Poor and Bennett demanded of the officers and stockholders of the company that a majority of its stock be transferred and delivered to them as trustees for the purpose of giving them complete control; that thereupon the agreement of November 29, 1904, was made between the trustees and all stockholders who became parties thereto by signing the same; that it is recited in the agreement that the stockholders deem it for their interest to act together concerning the management of the company, and to that end to unite their voting power and to place the same in the hands of the trustees with full power and discretion to sell the stock for the benefit of the company or its creditors, as therein provided, and that, in consideration of the premises and of the mutual covenants therein contained, the stockholders agreed to deposit with the trustees the number of shares of stock set opposite their respective names, and to leave the same with the trustees for the period of five years; that the stock so deposited should be transferred on the books of the corporation to the names of the trustees or as they might appoint, and that during the five years the trustees should possess and be entitled to execute with respect to said stock all rights of every name and nature, including the right to vote and to receive dividends and to sell the stock, then or thereafter deposited under the agreement, at any time,

and for such price or consideration as they determined would promote
the interests of the company or its creditors, and to apply the net pro-
ceeds to the payment of debts and obligations of the company, or the
purchase of claims against it, and to divide the surplus, if any, among
the stockholders who had become parties to the agreement according
to their respective interests, and it was provided that the trustees, in
voting and negotiating a sale of the stock, should exercise their best
judgment, but should not become personally liable for any error of
law or judgment with respect to any matter or thing done or omitted
under the agreement; that pursuant to said agreement upwards of 85
per cent. of the capital stock of the company, including 100 shares of
first preferred, 30 shares of second preferred, and 184 shares of the
common stock owned by the plaintiff, and 1,240 shares of the common
stock owned by the company itself, were so transferred and registered
in the names of the trustees; that prior thereto, and on the 13th day of
January, 1902, a contract designated in the complaint as the first
Goodwin contract was assigned by the parties of the second part there-
to to the Anthony Company, which thereby received 5,100 shares of a
total issue of 9,980 shares of the capital stock of the Goodwin Film &
Camera Company, which owned letters patent covering an invention
for photographic pellicle or film and process of producing the same;
that, when said first Goodwin contract was made, it was contemplated
by the parties thereto that an action might be brought against the East-
man Kodak Company to enjoin an infringement upon said patents,
and it was agreed that any damages recovered from the Eastman Com-
pany should be divided pro rata between the parties to the contract
in proportion to their holdings of its capital stock; that an action to
recover damages and to enjoin the infringement was brought against
the Eastman Company, and the Anthony Company advanced the ex-
penses of the litigation until it ceased business on the 1st of April,
1907; that on or about the 20th day of January, 1905, the defendants
Poor and Bennett, who were still acting as a committee for the credi-
tors and as trustees for the stockholders as aforesaid, demanded that
the officers of the Anthony Company assign the first Goodwin contract
to the Garfield Bank, the American Exchange Bank, and the defendant
Stephens, who was then a director and creditor of the Anthony Com-
pany, "as further security for the said company's indebtedness," and
the demand was complied with; that, at the time of requiring and
obtaining said assignment, Poor, Bennett, and Stephens were advised
by counsel that the Anthony Company would succeed in its suit against
the Eastman Company, and they knew that in that event there would
be a large recovery on account of the extent to which the Eastman
Company had used the process covered by the patents; that in March,
1905, defendant Stephens was elected president of the Anthony Com-
pany; that in or about the month of November, 1905, Poor, Bennett,
and Stephens, who were than in absolute control of the affairs and
property of the company through the controlling stock interest held
by Poor and Bennett, as trustees, and having supervision and manage-
ment of the affairs of the company as a committee for its creditors,
and Stephens being a director and president of the company, conspired
together to defraud the company and its stockholders, including the

stockholders who had transferred their stock under the agreement of November 29, 1904, of the first Goodwin contract and of the benefits and advantages thereof, and of the said 1,240 shares of the Anthony Company stock owned by itself, and before the expiration of the first Goodwin contract, and on or about the 14th day of November, 1905, without the knowledge or consent of the plaintiff, the three individual defendants caused the Anthony Company to execute an agreement canceling said contract and to return the 5,100 shares of the Goodwin Film & Camera Company stock to the parties of the first part to the contract, and on the next day, individually and for themselves, entered into a similar contract with said parties of the first part, designated the second Goodwin contract, and subject to a certain trust agreement securing certain creditors of the Goodwin Company, received for themselves the 5,100 shares of the capital stock which they had so caused to be returned, and it was therein provided that they should receive 51 per cent. of any recovery in the infringement suit; that the three individual defendants, pursuant to said conspiracy and for the purpose of defrauding the stockholders of the Anthony Company of their stock and of all their right, title, and interest in and to said company, including "such individual or representative right of action as they might have as such stockholders or holders of said trustees' receipts, against said Poor, Bennett, and Stephens for the fraud herein alleged, on or about April 12, 1907," organized the Ansco Company with the authorized capital of 3,000 preferred and 10,000 common shares, and shortly thereafter, purporting to act under section 33 of the Stock Corporation Law of New York, called a meeting, of which plaintiff had no notice or knowledge, of the stockholders of the Anthony Company and voted the stock of the Anthony Company, of which they had control, in favor of a resolution presented by themselves authorizing the voluntary sale of all the property rights, privileges, and franchises of the Anthony Company to the Ansco Company, and caused said property, with the exception of the second Goodwin contract and the said 5,100 shares of the Goodwin Company's stock and the 1,240 shares of the common stock of the Anthony Company, "which they fraudulently retained in their own possession," to be transferred and delivered to the Ansco Company, in return for which they received 1,700 shares of the common stock of the latter company, which, with the exception of 49.60 shares, they distributed among the stockholders of the Anthony Company and the holders of the trustees' receipts for stock, and the Anthony Company itself, on account of its own stock held by it, in the proportion of one share of Ansco common stock for five shares of the Anthony Company first preferred, and one share of the Ansco Company common for seven shares of the Anthony Company second preferred, and one share of the Ansco Company common for 25 shares of the Anthony Company common; that plaintiff received on said distribution, as a dividend on his stock which was held by said trustees, 31.64 shares of the common stock of the Ansco Company; that plaintiff reposed implicit trust and confidence in Poor, Bennett, and Stephens, and believed that they were acting honestly and for the best interest of the stockholders of the Anthony Company, and for that reason when they represented to him prior to the delivery to him of

said 31.64 shares of the Ansco Company's stock that a reorganization of the Anthony Company had been effected by them by the transfer of the assets of the Anthony Company to the Ansco Company, and that said amount of the stock of the Ansco Company was his full share of the proceeds, he accepted the same without investigation and without knowledge that any of the assets of the Anthony Company had been misappropriated or withheld by them; that plaintiff and other holders of trustees' receipts were fraudulently induced by the individual defendants to surrender their receipts and all right, title, and interest in and to their stock in the Anthony Company, and to execute and deliver to Poor, Bennett, and Stephens certain receipts and releases, the contents of which he was unable to give; that as a dividend on the 1,240 shares of the Anthony Company stock, which belonged to it, Poor, Bennett, and Stephens obtained 49.60 shares of the common stock of the Ansco Company, which they, pursuant to said fraudulent conspiracy, and without plaintiff's knowledge or consent, wrongfully appropriated to their own use; that, at the time of the transfer of the property of the Anthony Company to the Ansco Company, all of the indebtedness of the Anthony Company was paid by the issue and delivery to its creditors of preferred and common stock and bonds of the Ansco Company, but, notwithstanding this fact, the individual defendants, pursuant to said conspiracy and unknown to the plaintiff, retained in their own names and possession the second Goodwin contract and 5,100 shares of the Goodwin Company's stock, and continued to retain them until the month of May, 1910, when they sold and assigned the same to the Ansco Company and received in return therefor 4,030 shares of the common stock of the Ansco Company, which they wrongfully, and in violation of the rights of the plaintiff and other former stockholders of the Anthony Company, and pursuant to said conspiracy, and without the knowledge or consent of the plaintiff, appropriated to their own use; that in the month of February, 1914, the infringement suit was decided in favor of the Goodwin Company, and shortly thereafter a settlement was effected, which resulted in the payment of a very large sum of money by the Eastman Kodak Company to the Goodwin Company; that, at the time of said settlement, the Ansco Company was the owner of all the stock of the Goodwin Company, and a large dividend, the amount of which was unknown to the plaintiff, was declared by the Goodwin Company on its stock out of the proceeds of said settlement; that out of said dividend the Ansco Company has paid off all of its indebtedness, including its bonds and preferred stock, which were issued for the indebtedness of the Anthony Company, and a dividend of 100 per cent. on its common stock, and the individual defendants, as holders of said 4,030 shares of the common stock of the Ansco Company, received the sum of $403,000 as a dividend, which they have wrongfully and in violation of the rights of the stockholders of the Anthony Company, and pursuant to said fraudulent conspiracy, appropriated to their own use; that the individual defendants, as holders of the said 49.60 shares of common stock of the Ansco Company, received a dividend of $4,960, which they have likewise appropriated to their own use; that the individual defendants re-

ceived further dividends of said stock of $10,199 on or about the 1st of July, 1914, and the same amount on or about October 1, 1914, which they have likewise appropriated to their own use; that, at the time of the transfer and conveyance of its assets as aforesaid, the Anthony Company ceased to do business, and has transacted no business since, and that all of the capital stock of the Anthony Company is now held by or is under the control of the individual defendants, with the exception of a few shares representing not over 1 per cent. of the stock, which are held by persons who were stockholders at the time of the transfer of the Anthony Company's property to the Ansco Company; that the Anthony Company has no indebtedness, and no meeting of its stockholders or directors has been held, and no election of officers has been had, since the said transfer of its assets; that all of the officers and directors of the Anthony Company and the Ansco Company are under the control of the individual defendants, and that the defendant Stephens is the president of the Ansco Company and has been such president ever since a short time after its incorporation; that, at the time of said transfer of the assets of the Anthony Company, the individual defendants represented to certain of its stockholders that it was their intention to procure the dissolution of the company after such transfer, but that they failed and neglected to dissolve the company, "and have kept it alive for the sole purpose of protecting themselves from any action which might be brought against them for the fraud herein alleged by maintaining said company as a barrier between themselves and its former stockholders"; that there are many former stockholders of the Anthony Company similarly situated with the plaintiff, and they all have a common interest with the plaintiff in compelling an accounting by the said Poor, Bennett, and Stephens in this action, and to that end judgment is demanded that defendants Poor, Bennett, and Stephens transfer and deliver to plaintiff and to all other former stockholders of the Anthony Company the stock of that company which they received as trustees, and that they be compelled to deliver up for cancellation the releases given by plaintiff and all other former stockholders of the Anthony Company at the time such stockholders received from them stock in the Ansco Company; that the three individual defendants be compelled to account for all stock of the Ansco Company received by them on the sale of the second Goodwin contract, and all dividends received by them on said stock, and for all stock in the Ansco Company received by them "as dividends upon or distributive share allotted to the 1,240 shares of the common stock" of the Anthony Company, and that they be restrained from transferring, assigning, or disposing of any part of the Ansco Company's stock received by them which is the subject of this action, and from transferring, assigning, or disposing of any of the stock of the Anthony Company received by them as such trustees, and that a receiver be appointed to receive from them the Ansco Company stock and all dividends received by them thereon, and to divide and distribute the same among those who were the holders of the stock of the Anthony Company or of trustees' receipts therefor when its property was transferred to the Ansco Company in proportion to the amount of stock of the Anthony Company or of trustees' receipts therefor then held by them, and for

such other and further relief as to the court may seem just and equitable, together with the costs of the action.

The trustees demurred to the amended complaint on four grounds: (1) That plaintiff has not legal capacity to sue; (2) that there is a defect of parties plaintiff; (3) that causes of action have been improperly united; and (4) that it does not state facts sufficient to constitute a cause of action.

[1] The first ground of the demurrer is clearly without merit. The claim that plaintiff has not legal capacity to sue is predicated on the erroneous assumption that the action is brought in the right of the corporation. The action is not derivative but representative. It is brought in behalf of all stockholders who acquired rights under and by virtue of the agreement, which is annexed to and made a part of the complaint. The complaint contains some allegations which would be appropriate to an action by or in the right of the corporation, and are not essential to an action by stockholders for an accounting under the contract; but the Court of Appeals has finally established the rule that, in determining the nature and scope of the action attempted and intended to be pleaded, the court should consider all of the allegations of the complaint, and that, in doing so, allegations not germane to the cause or causes of action evidently intended and attempted to be pleaded should be regarded as surplusage, and that rule is especially applicable and important in determining whether an action is brought in the right of the stockholder individually, or as representing all others similarly situated, or is derivative and brought by a stockholder in the right of the corporation. Witherbee v. Bowles, 201 N. Y. 42, 95 N. E. 27. See, also, Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667.

[2] The claim with respect to their being a defect of parties plaintiff is that the allegations are insufficient, under section 448 of the Code of Civil Procedure, to authorize the action in the right of all the stockholders who became parties to the agreement or succeeded to their rights, in that the number of such stockholders is not stated, and it is not shown that it would be impracticable to bring them in, and is not shown that the question at issue is common or of general interest to them all. The second ground of the demurrer is likewise without merit. It is sufficiently alleged, and is manifest, that there was a great number of the former stockholders of the Anthony Company, and of persons who have succeeded to their rights, who occupy a similar position with respect to said agreement to that occupied by the plaintiff, who, if he be entitled to an accounting, are entitled to like relief.

As I view the complaint, it was designed to plead but a single cause of action for breaches of trust. There are no allegations clearly showing an attempt to plead a cause of action in the right of the Anthony Company, and any intent so to do is disclaimed in the brief. The plaintiff shows, in effect, that it was intended, when the assets and franchises of the Anthony Company were transferred to the Ansco Company, to dissolve the former corporation, and that the trustees undertook to take the necessary steps therefor, and that the stockholders, if not all legally bound by the plan at the time of the transfer, subse-

quently ratified it by acquiescing therein and receiving through the trustees what they then supposed was their entire share of the surplus of the consideration for distribution. What the plaintiff complains of is not that the trustees unlawfully transferred the property of the Anthony Company and discontinued its business, but that they and the defendant Stephens entered into an agreement to defraud the stockholders, which they consummated, as alleged, by receiving and appropriating to themselves the valuable first Goodwin contract under the guise of canceling it, then secretly taking the second Goodwin contract for their individual benefit, and by appropriating to themselves the treasury stock of the Anthony Company, consisting of 1,240 shares, and receiving to their own use the consideration paid to them by the Ansco Company on account thereof. It is alleged that all of the debts of the Anthony Company have been paid, and, if so, on the facts alleged the complaint presents a prima facie right in the plaintiff and other stockholders interested under the agreement to compel the individual defendants to account for their acts as trustees, including the fruits of the second Goodwin contract. We are not concerned with the rights acquired by the three creditors as security for whose claims the first Goodwin contract and the Goodwin Company stock were assigned by the officers of the Anthony Company, for those claims have since been paid, and, moreover, the pledgees evidently surrendered their rights when the contract was canceled and the stock was delivered back to the parties of the first part to the second Goodwin contract.

[3] The plaintiff's case rests upon the well-established principle that a trustee must act in good faith, and will not be permitted to use his trusteeship for his individual advantage, benefit, or profit. Getty v. Devlin, 70 N. Y. 504; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667.

[4] It may well be that the plaintiff will not be entitled to all of the relief demanded. The quantum of relief, however, is not presented by demurrer, and will be for the trial court to determine in the first instance. A complaint is good as against a demurrer for insufficiency, if the plaintiff alleges facts which, if established, will entitle him to some relief.

[5-7] Nor is it essential, in a suit in equity, for the plaintiff to show a right to the same relief against all of the defendants. People v. Eq. Life Assurance Society, 124 App. Div. 714, 728, 109 N. Y. Supp. 453, and cases cited. Although it appears that the plaintiff had no notice of the meeting of the stockholders of the Anthony Company, at which the resolution for the transfer of its property to the Ansco Company was adopted, still he accepted the fruits of that action by receiving what he supposed was his proportionate share of the Ansco Company stock, and he and all other stockholders, who thus acquiesced in that action, are estopped from questioning the legality thereof. Cook on Stock Corporations (6th Ed.) § 670, pp. 2016, 2017; Boynton v. Roe, 114 Mich. 401, 72 N. W. 257; Hoene v. Pollak, 118 Ala. 617, 24 South. 349, 72 Am. St. Rep. 189; In re Lincoln, etc., Co., 190 Pa. 124, 42 Atl. 538.

The complaint proceeds upon the theory that all stockholders approved or have acquiesced in the transfer. It was competent, however, for the Legislature, as it did by section 33 of the Stock Corporation Law, as amended by chapter 130 of the Laws of 1901, to authorize such a transfer of the property and franchises of one corporation to another. Cook on Stock Corporations (6th Ed.) § 669, and cases cited. It is fairly to be inferred from the allegations of the complaint that the provisions of the statute were complied with, or waived by the stockholders. According to the allegations of the complaint, the trustees, excepting in so far as they have attempted to make a secret profit for themselves, have proceeded on the theory that the Anthony Company was dissolved, or that its formal dissolution was unnecessary or was a mere formality, which, according to the allegations of the complaint, it was their duty to comply with, for they have distributed the consideration received from the Ansco Company, with the exception of that received on account of the Goodwin contract and stock, among the stockholders of the Anthony Company, in proportion to such stock holdings, taking for themselves the proportion due to the treasury stock of the Anthony Company. If this was not done upon the theory that the corporation was in effect dissolved, all of its debts having been paid, and no one being interested therein, excepting the stockholders, it must have been upon the theory that the consideration paid by the Ansco Company was for the stock of the Anthony Company; but the allegations to the effect that the Anthony Company stock is still held by the trustees and the demand for a return of the stock are inconsistent with the latter theory. If necessary, the plaintiff and others similarly situated may be entitled to a decree requiring that the Anthony Company be formally dissolved; but if not, and if the stockholders would not be entitled without such formal dissolution to have the consideration which was received by the trustees from the Ansco Company on account of the 1,240 shares of the treasury stock of the Anthony Company divided and distributed, that would only go to the extent of the relief to be granted by the final decree. The plaintiff does not claim to be entitled to recover his distributive share of that part of the consideration in the right of the Anthony Company. He claims to be entitled thereto in his own right as a stockholder; and since he is, in any event, entitled to other relief, whether his claim in that regard is well founded will be for the trial court to decide. The debts of the Anthony Company having been paid in full, and the trustees having, excepting in so far as they have attempted to make secret profits, proceeded on the theory that the consideration received from the Ansco Company is to be distributed among the stockholders of the Anthony Company in proportion to their respective holdings, they should not be heard to say, in support of their demurrer to the complaint, that their accounting, in so far as they have accounted to the stockholders, was voluntary, and they are not answerable to them in equity or otherwise for having, in violation of their trust, taken to themselves and appropriated to their own use a large part of the consideration received from the Ansco Company. If there be any good reason why the plaintiff and other stockholders of the Anthony Com-

pany are not entitled by an accounting by their trustees and for said secret profits at this time, it does not appear by the complaint, and is not presented by a demurrer thereto.

[8] The failure of the defendants to have the Anthony Company formally dissolved cannot afford them protection against being called to account for violations of their trust and against being called upon to distribute the assets of the corporation, other than those required to defray the expenses of formal dissolution, among the stockholders, who, on the facts alleged, are the only persons having any interest therein.

It follows that each order should be reversed, with $10 costs and disbursements, and the respective motions made by the plaintiff for orders overruling the demurrers should be granted, with $10 costs, but with leave to each respondent to withdraw his demurrer and to . interpose an answer on payment of the costs of the appeal and of the motion. All concur.