[Civil Nos. 2218 and 2265 (Consolidated). Filed May 22, 1925.]

[236 Pac. 716.]

WILLIAM B. KINEALY, Appellant, v. EUGENE D. O'REILLY, as Executor of the Estate of MARY C. O'REILLY, Deceased, Appellee.

WILLIAM B. KINEALY, as Assignee of the Interests of JOSEPH M. O'REILLY and GERALD B. O'REILLY, in the Estate of MARY C. O'REILLY, Appellant, v. EUGENE D. O'REILLY, Executor of the Estate of MARY C. O'REILLY, Deceased, Appellee.

1. EXECUTORS AND ADMINISTRATORS—FAILURE TO NOTIFY ASSIGNEE OF DISTRIBUTIVE SHARES, OF SETTING OF PETITION TO SET OFF INDEBTEDNESS DUE ESTATE AGAINST SUCH SHARES, NOT JURISDICTIONAL.— Failure to notify the assignee of distributive shares of certain legatees, of setting for trial of executor's petition to set off against such distributive shares indebtedness alleged to be due

---

1. See 19 R. C. L. 674.

estate from legatees, was not jurisdictional, especially where assignee entered appearance by his counsel.

2. EXECUTORS AND ADMINISTRATORS — ASSIGNEE, HAVING ACTUAL KNOWLEDGE OF SETTING OF EXECUTOR'S PETITION TO SET OFF INDEBTEDNESS AGAINST DISTRIBUTIVE SHARES, CANNOT COMPLAIN OF LACK OF FORMAL NOTICE OF SETTING.—Where counsel of assignee of distributive shares of certain legatees had entered appearance in cause and actual knowledge of day set for hearing of executor's petition to set off, against such shares, indebtedness alleged to be due estate from legatees, *held*, that assignee cannot complain that he did not have technical and formal notice of the setting.

3. JUDGMENT—REDUCTION OF TESTIMONY TO WRITING UNNECESSARY, WHERE APPELLANT VOLUNTARILY APPEARED AND FILED ANSWER.— Under Civil Code of 1913, paragraph 558, trial court is not required to have testimony reduced to writing and filed, where appellant voluntarily appeared and filed an answer.

4. DESCENT AND DISTRIBUTION—IN DETERMINING AMOUNT TO BE PAID LEGATEES, THEIR INDEBTEDNESS TO ESTATE SHOULD BE CONSIDERED. Under Civil Code of 1913, paragraphs 861–864, probate court, in determining amount to be paid heirs or legatees, should consider their indebtedness, if any, to estate.

5. EXECUTORS AND ADMINISTRATORS—EXECUTOR HELD ENTITLED TO SUE LEGATEES FOR ACCOUNTING ON CONTRACT ENTERED INTO BY THEM WITH DECEDENT, WHERE DECEDENT WOULD HAVE BEEN ENTITLED TO MAINTAIN SUCH ACTION.—Where decedent and her sons and legatees had entered into contract whereby sons were to operate a corporation owned by decedent, all profits to go to benefit of corporation, *held*, that sons were trustees for benefit of decedent as well as corporation, entitling decedent to maintain action for breach of such contract and demand an accounting of trust, so far as her interests were concerned, notwithstanding corporation might have done likewise, and consequently executor of her estate could maintain such action for benefit of the estate.

6. EXECUTORS AND ADMINISTRATORS—PETITION OF EXECUTOR TO SET OFF, AGAINST DISTRIBUTIVE SHARES OF LEGATEES, INDEBTEDNESS ALLEGED DUE TO ESTATE FROM LEGATEES, HELD TO STATE A CAUSE OF ACTION.—Petition of executor to set off, against distributive shares of certain legatees, indebtedness alleged to be due estate from legatees, *held* to state a cause of action, based on breach by legatees of contract between them and decedent, whereby stock of corporation, owned by decedent, was placed in trust for benefit of creditors and legatees were to operate corporation for benefit of corporation.

7. WILLS — ASSIGNEE OF DISTRIBUTIVE SHARES OF LEGATEES IN NO BETTER POSITION THAN LEGATEES.—An assignee of distributive

shares of legatees is in no better position than such legatees, so far as question of setting off, against such distributive shares, alleged indebtedness due estate from legatees, is concerned.

See (1) 24 C. J., p. 513.  (2) 24 C. J., p. 513.  (3) 38 Cyc., p. 1299 (1926 Anno.).  (4) 18 C. J., p. 883.  (5) 23 C. J., p. 1131 (1926 Anno.).  (6) 24 C. J., p. 515.  (7) 18 C. J., p. 897.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. C. Struckmeyer, Judge. Affirmed.

Mr. C. F. Ainsworth, for Appellant.

Messrs. Zimmerman & Mulhern, for Appellees.

LOCKWOOD, J.—In 1915, M. B. O'Reilly Realty & Investment Company, a corporation, hereinafter called the company, was engaged in the general real estate business in Missouri. It had a capital stock of $100,000, all of which belonged to Mary C. O'Reilly, hereinafter called decedent. The company was then heavily indebted, and it appeared that it might become bankrupt, and, for reasons not necessary to state here, decedent might be individually liable for some of the debts. Decedent and three of her sons, Gerald B. O'Reilly and Joseph M. O'Reilly, hereinafter called the legatees, and Eugene D. O'Reilly, hereinafter called the executor, and the company, entered into an agreement which in substance was as follows: First, decedent transferred certain property of her own to the company, and placed its stock in the hands of a trustee; second, the executor and the legatees agreed to operate and manage the business of the company as a going concern, and that all their operations, dealings, and profits in real estate, except their private holdings or operations, should inure to the benefit of the company; third, that after the creditors were paid the stock should be returned to

7.  See 11 R. C. L. 246.

decedent, the company should cease active business, and its goodwill should inure to the executor and the legatees. Some years later decedent passed away, leaving considerable property in Arizona and elsewhere. Eugene B. O'Reilly, was named executor in her will, and he duly qualified as such, proceeding to probate the estate and filing his final account, which was approved with some modifications July 11, 1921. Thereafter, on the petition of Gerald B. O'Reilly, a partial distribution of the estate was ordered, under date of October 30, 1922; the amount on hand for distribution being stated as $13,381.89. On November 3, 1922, the executor deposited with the Phoenix National Bank two checks payable to its order, marked as distributive shares of the two legatees, but immediately attempted to garnish the money in a suit which he as executor had brought against them on an alleged indebtedness to the estate. The garnishment was later quashed.

Up to this point, chronologically speaking, there is a substantial agreement as to the facts, but from here on there is a bitter dispute between counsel as to what actually happened in the proceedings, so we are compelled to resort to the abstract of record, which unfortunately is not as complete as we might wish.

The next thing of importance which we find therein is an order which we quote in part:

"Order for Partial Distribution. Now comes Gerald B. O'Reilly, the petitioner herein, by Messrs. Baker and Whitney, his attorneys, and shows to the court that his petition for partial distribution herein was filed in the above-entitled court and cause on the 11th day of July, 1922, . . . and the hearing of said petition for various good causes and reasons having been duly continued according to law until this 30th day of October, 1922, and the said petition being now presented to the court, and the said petitioner appearing by his said counsel, . . . the court grants

said petition as follows, to wit: It is ordered by the court that the sum of $12,631.86 cash money . . . shall be and is distributed as follows, to wit, the said Eugene D. O'Reilly, as said executor, shall pay and deliver to Gerald B. O'Reilly the sum of $2,717.30, being the aggregate amount of the portion due him individually as an heir. The said Eugene D. O'Reilly, as said executor, shall pay and deliver to Gerald B. O'Reilly in and to said estate the sum of $2,717.30, being the aggregate amount of the portion due him as said assignee of the said Joseph M. O'Reilly. . . . It is further ordered, adjudged, and decreed that it appearing to the satisfaction of the court . . . that no further indebtedness can occur, no bonds shall be required of any of said heirs for the payment of their said respective distributive shares. . . . Done in open court this 29th day of December, 1922, F. H. Lyman, Judge. Filed December 29, 1922.''

We then find a motion to set aside the foregoing order, under date of January 4, 1923, reading in part as follows:

''Now comes the executor of the above-entitled estate . . . and moves the court for an order setting aside that certain order for partial distribution entered in the above-entitled cause on the 29th day of December, 1922, and as a good cause and reason therefor shows to the court as follows: . . . Because said order was made and entered by the court through inadvertence and mistake after having made and entered a previous order for partial distribution in this cause for the same purpose, which said previous order is still in effect, and which had at the time of the making of the order herein in question been fully acted upon and carried out by the executor. This motion is based upon, and the court's attention is respectfully called to, the files and records in this cause, particularly the minute order dated October 30, 1922. . . . ''

No further proceedings appear until April 7, 1923, when Gerald B. O'Reilly asked to have the executor cited for contempt for not obeying the order of December 29, 1922. Citation was issued the same day. On April 16th the executor answered, setting up an

indebtedness from the legatees to the estate of $48,000 as a reason for his not complying with the order of December 29th. The court held the answer insufficient in the following language:

"The court having jurisdiction to order the distribution, and the distribution having been ordered by the decree of the court entered on December 29, 1922, and that decree being in full force and effect to-day, neither appealed from nor set aside by this court, its force and efficacy cannot be attacked by the executor on a rule to show cause. Until vacated or set aside or appealed from, the executor is bound to comply with the order of the court. . . . The executor now present in open court is found and adjudged in contempt of this court, . . . and is accorded five (5) days from this date to purge himself of such contempt. . . . "

In the meantime, to wit, on October 22, 1922, the legatees had assigned their distributive shares to William B. Kinealy, hereinafter called appellant, which assignment, however, was not filed in the probate court until April 10, 1923, three days after Gerald O'Reilly had filed his request for a citation for contempt, and on May 2, 1923, C. F. Ainsworth was entered of counsel for Kinealy. On May 5th the time set for the executor to purge himself of contempt was continued until five days after the disposition of the motion to vacate the decree dated December 29th. On the same date the executor filed an amended motion to set aside the order of December 29th, alleging therein the indebtedness of the legatees to the estate as one of the reasons therefor, and on the same day again filed a petition setting up the agreement of June 24, 1915, and alleging that the legatees, while conducting the business of the company thereunder, had also engaged in the real estate and investment business, both individually and as G. B. O'Reilly & J. M. O'Reilly Real Estate Mortgage Company, and had diverted the business of the M. B. O'Reilly Realty

& Investment Company to themselves and their new company, so that there was no longer more than enough assets of the company to pay its creditors. He also alleged that from this diverted business they had earned commissions amounting to $48,000, which commissions were an asset of the estate of the decedent, and due it from the legatees. On May 7th the funds represented by the two checks on the Phoenix National Bank under the order of October 30th, 1922, were ordered by the court to be repaid to the executor. May 19th, Kinealy, as an assignee of the legatees, demurred to the petition filed by the executor May 5th, on the ground of lack of jurisdiction of the court, of lack of legal capacity on the part of the executor to maintain the action, and that the petition did not show facts to constitute a cause of action in favor of the executor. The latter moved to strike Kinealy's petition from the files on the ground that he was not a proper party to the action and had no standing in the court. June the 12th the minutes show the following entry:

"It is ordered by the court that the order and decree entered December 29th, 1922, decreeing distribution, will be vacated and set aside in so far as the same decrees distribution to Joseph M. O'Reilly and Gerald B. O'Reilly, without prejudice to their right to submit to this court the justice of their rights to receive distribution."

And on June 15th the court entered an order from which we quote as follows:

"Petition to vacate sets forth that the distributees Gerald B. and Joseph M. O'Reilly are indebted to the estate of Mary C. O'Reilly in a large amount far in excess of their distributive shares. William B. Kinealy, assignee of the distributees, has demurred thereto, and the executor moves to strike the answer, consisting of the demurrer of the assignee. Without passing upon the motion of the executor to strike and on the right of assignee to appear and defend the

petition, I have considered the petition upon its merits. . . . The order and decree entered December 29th, 1922, decreeing distribution, will be vacated and set aside in so far as the same decrees distribution to Joseph M. O'Reilly and Gerald B. O'Reilly, without prejudice to their right to submit to this court the justice of their right to receive distribution."

We find in the minutes under date of June 25th, 1923:

"It is ordered by the court that the executor's motion to strike in the above-entitled matter be and the same is hereby overruled."

On July 2d the court ordered that a hearing, on the petition of the executor to set off the distributive shares of the legatees against the indebtedness claimed by the executor, should be set for September 11th, 1923. The order further provided that the executor notify the distributees or their attorney, and notice thereof was sent by mail as provided by the statute to G. B. and J. M. O'Reilly and also to Messrs. Baker and Whitney. The setting of September 11th was duly continued to September 26th, at which time the following minute entry appears:

"Thereupon this matter comes on for hearing upon the petition of the executor for set-off against the distributive shares of certain heirs. Evidence oral and documentary is introduced on behalf of the petition, there being no evidence in opposition thereto. . . . It is ordered by the court that a set-off against the distributive shares of Gerald B. and Joseph M. O'Reilly the amount of their indebtedness to the estate of Mary C. O'Reilly prior to her death. It is ordered, adjudged, and decreed that judgment be entered herein against Gerald B. O'Reilly for the sum of $42,565.40."

Baker and Whitney, on October 11th, moved to correct the record so that the minutes of May 2d, 1923, would show that as of that date they withdrew as attorneys for the legatees, asking that the order of

withdrawal be entered *nunc pro tunc* as of May 2d, 1923. After a hearing, discussion, and some consideration, the court denied the motion to correct the minutes. Kinealy appealed both from the order setting aside the decree of distribution of December 29th, 1922, and the order setting off the indebtedness against the legatees, and the two appeals were consolidated.

The first assignment of error, to the effect that the motion of January 4th, 1923, was too late because filed more than ten days after the order of October 30th, 1922, and because the last-named order had been complied with, is without merit. The motion was to set aside the order of December 29th, 1922, and not that of October 30th, and if the executor had complied with the first order he was certainly entitled to object to being ordered to pay a legacy twice.

Nor is the second assignment well taken. The trial court expressly held it would not consider any showing of indebtedness as a purging of contempt so long as the order of December 29th was in force. It was not until the order of June 15th, setting aside that of December 29th, was made, that the court would even set for hearing the question of the indebtedness. Neither is the fourth assignment valid, as no order was ever made setting aside the order of distribution of October 30th, 1922.

We find nothing in the proceedings in contravention of Rule 7 of the superior court of Maricopa county, as cited by appellants. That rule specifically applies to civil cases only, and not to probate matters, which are clearly differentiated by the rule. Appellant had entered an appearance by his counsel, and failure to notify him of the setting of the case for trial was not jurisdictional. *Union Brewing Co.* v. *Cooper,* 15 Colo. App. 65, 60 Pac. 946; *Glos et ux.* v. *Gleason,* 209 Ill. 517, 70 N. E. 1045; *Chappell* v. *Real Estate Pooling Co.,* 89 Md. 258, 42 Atl. 936. Notwithstand-

ing this, the court directed notice to be given to the distributees and their attorneys, and the record shows such notice was properly given. Since the court refused to amend its minutes as requested by Baker and Whitney, we must assume they were still attorneys of record. In addition to this, it is asserted by appellee, and not denied by appellant, that at some time after July 2d his attorney had actual knowledge that the matter was to be called up for hearing. We think, under such circumstances, appellant cannot complain that he did not have the technical and formal notice of the setting.

We find no merit in assignments 7 and 8. The trial court is only required to have the testimony reduced to writing and filed when the service of process is by publication and no answer has been filed. Paragraph 558, R. S. A. 1913 (Civ. Code). In this case appellant had voluntarily appeared and filed an answer. There is nothing in the record sustaining assignment No. 8.

Regarding assignment No. 3, which raises the only issues in the case which are not merely matters of formal procedure, we think there is no doubt that in determining the amount to be paid heirs or legatees, the probate court may and should consider their indebtedness, if any, to the estate. Our probate proceedings are handled by our superior courts, which have the broadest possible *nisi prius* jurisdiction. The procedure taken is fully sustained by paragraphs 861–864, R. S. A. 1913 (Civ. Code), and the justice of the rule is well shown in the case of *Lietman* v. *Lietman*, 149 Mo. 112, 73 Am. St. Rep. 374, 50 S. W. 307. The court therein says:

"The reason, necessity and wisdom of the rule is strikingly illustrated in this case, where an insolvent, nonresident legatee seeks to diminish the distributive shares of others, by claiming a part of the estate, while he owes the estate twice as much as his legacy amounts to. It would be idle to remand the executor to a suit at law or a bill in equity, for the executor

cannot go to the domicile of the debtor and maintain a suit, having no extraterritorial capacity to sue, *Scudder* v. *Ames,* 89 Mo. l. c. 522, and the debtor will not come to this state so he can be served."

This brings us to the question as to whether the executor is entitled to maintain the action in that capacity. It is claimed by appellant that ordinarily a stockholder—even though he owns all the stock of the corporation—may not maintain a suit to enforce an obligation made only with and due only to the company as such, and that since decedent, for the foregoing reasons, could not have maintained the action herself, her executor can do no more than she could have done. Appellee, however, contends, while admitting the general rule, that he may maintain a suit for an accounting on a contract of the kind set forth herein, notwithstanding that the corporation might have done likewise. We think appellee's position is well taken. Decedent was a party to the contract, and her sons were trustees for her benefit as well as that of the corporation. In such a case she can maintain an action for a breach of the contract, and demand an account of the trust so far as her interests are concerned. *Brock* v. *Poor,* 167 App. Div. 784, 153 N. Y. Supp. 332; *Meyerson* v. *Franklin Knitting Mills,* 185 App. Div. 458, 172 N. Y. Supp. 773; *White* v. *First Nat. Bank,* 252 Pa. 205, 97 Atl. 403.

We thus reach the last and vital question: Does the petition state any breach of the contract in so far as the legatees' duties to decedent were concerned? The clauses of the agreement necessary to determine this point read as follows:

"Said trustee is hereby authorized to hold such stock in escrow as a trust fund, first for the benefit of the creditors and second for the benefit of Mary C. O'Reilly or her heirs. After all the creditors of said M. B. O'Reilly Realty & Investment Company have been fully paid and satisfied, then such trustees shall

deliver the said stock to her or to her heirs, and the M. B. O'Reilly Realty & Investment Company shall inure to the benefit of said Gerald B. O'Reilly, Joseph M. O'Reilly, and Eugene D. O'Reilly. . . . The said parties of the first part agree that all their operations, dealings and profits in real estate while connected with the M. B. O'Reilly Realty & Investment Company (except their private holdings or operations while connected with the M. B. O'Reilly Realty & Investment Company, if any) shall inure to the benefit of the said M. B. O'Reilly Realty & Investment Company.''

It will be seen by this that after the creditors had been paid in full, decedent was to take the stock of the company, which, of course carried with it the tangible assets, and the executor and the legatees were to get the goodwill. Until that time, all the earnings in the real estate business of the legatees went to the company. The petition sets up plainly a breach of trust by the legatees. It was their duty to apply all their earnings as above to the company, so that the creditors might be paid off and the stock returned to decedent. This, it is alleged, they did not do. Under the contract, if the allegations of the petition are true, it was their duty to pay into the treasury of the company some $48,000. This would have enabled the company to pay its debts and to release the stock to decedent's estate. But, as was said in *Meyerson* v. *Franklin Knitting Mills, supra:*

''It was not the mere paper shares that plaintiff wanted, but shares that would be valuable as representing an interest in a going concern, which the defendant undertook to supply with credit and with goods.''

And so, in this case, decedent was entitled to stock which would be valuable as representing the tangible assets which the company would have after paying its creditors from its total resources which included the amount due it from the legatees. We think the petition stated a cause of action as against them.

28 Ariz.—17

Of course, on the status of the record as it exists we are bound to assume the findings of the trial court on the facts are correct. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587.

Appellant being the assignee of the legatees is in no better position than they so far as the legacies are concerned, and the judgment should be affirmed.

It is so ordered.

McALISTER, C. J., and ROSS, J., concur.