[Civil No. 2342.   Filed November 6, 1925.]

[240 Pac. 343.]

# UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellant, v. DODD L. GREER, as Administrator of the Estate of STANSELL GREER, Deceased, Appellee.

1. EXECUTORS AND ADMINISTRATORS—SURETY ON BOND OF ADMINISTRATOR HELD ENTITLED TO QUESTION BY MOTION CORRECTNESS OF JUDGMENT AND ORDER AGAINST ADMINISTRATOR.—Surety on bond of administrator *held* entitled to question by motion correctness of judgment and order against its. principal disallowing certain items in his account, where it was not a party to the proceedings, and judgment against administrator would be binding on surety, and administrator refused to prosecute an appeal from the judgment and dismissed it when started by his attorneys.

2. EXECUTORS AND ADMINISTRATORS—ESTATE HELD NOT ESTOPPED TO REQUIRE ADMINISTRATOR TO MAKE GOOD LOSSES SUFFERED BY HIS ADMINISTRATION.—Estate *held* not estopped to require administrator to make good any losses suffered by his administration by an agreement with widow of decedent preferring certain creditors of the estate, where there were other creditors besides her, and their claims represented nearly two-thirds of the debts owed by estate, and she acted only as trustee for such creditors, in presenting their claims to administrator and court for allowance.

3. EXECUTORS AND ADMINISTRATORS—AGREEMENT HELD NOT TO CONSTITUTE A FAMILY ARRANGEMENT, SO AS TO ESTOP ESTATE FROM REQUIRING ADMINISTRATOR TO MAKE GOOD ANY LOSSES SUFFERED BY HIS ADMINISTRATION.—Agreement between decedent's widow and certain creditors of his estate, constituting a mere cloak to prefer such creditors over her and minor children of deceased, *held* not a "family arrangement," so as to estop estate from requiring administrator to make good any losses suffered by reason of his administration.

4. EXECUTORS AND ADMINISTRATORS — ADMINISTRATOR PROPERLY REQUIRED TO MAKE GOOD ANY EXCESS PAID CREDITORS OF ESTATE WITHOUT ORDER OF COURT.—Court properly ordered administrator to make good any excess paid creditors of estate without an order of the court over what they were entitled to on a *pro rata* basis, where it appeared that estate could not pay all of its creditors 100 per cent of their claims.

5. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACCOUNT PROPERLY CHARGED FOR UNCOLLECTED BALANCE OF SALE PRICE OF AUTOMOBILE BELONGING TO ESTATE.—Court properly charged account of administrator for balance of sale price uncollected on automobile belonging to estate, where he had no court order permitting its sale on credit.

6. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACCOUNT PROPERLY CHARGED WITH BALANCE OF SALE PRICE UNCOLLECTED OF PLANER AND HOUSE BELONGING TO ESTATE, NOTWITHSTANDING THAT SALE WAS VOID.—Administrator's account *held* properly charged for balance of sale price uncollected on planer and house belonging to estate, which sale was made without order of the court, notwithstanding that sale, under Civil Code of 1913, paragraph 905, was void, and that administrator's successor could recover the property.

7. EXECUTORS AND ADMINISTRATORS—APPRAISEMENT OF NOTE IN INVENTORY OF ESTATE WAS PRIMA FACIE EVIDENCE OF ITS VALUE.—Appraisement in the inventory of an estate of a note belonging to estate was *prima facie* evidence of its value or lack of value.

8. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACCOUNT HELD NOT CHARGEABLE WITH AMOUNT OF NOTE DUE ESTATE.—Administrator's account *held* not chargeable for failure to collect note belonging to estate, where it had been appraised as worthless in the inventory, and there was no evidence that it had any value other than prospective value.

9. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD INSUFFICIENT TO OVERCOME PRIMA FACIE CASE THAT NOTE BELONGING TO ESTATE WAS VALUELESS.—Testimony of appraisers of an estate that note belonging thereto had only a prospective value *held* insufficient to overcome *prima facie* case of inventory that note was valueless.

10. EXECUTORS AND ADMINISTRATORS—CARE AND DILIGENCE REQUIRED OF ADMINISTRATOR STATED.—Administrator is bound to exercise such care and diligence as prudent and judicious men ordinarily bestow upon their own important affairs, and, for failure to exercise such degree of care and prudence, he and his surety are liable in damages.

11. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACCOUNT NOT CHARGEABLE WITH LOSS FROM FAILURE TO SELL BANK STOCK BELONGING TO ESTATE.—Administrator's account *held* not chargeable with losses resulting from failure to sell bank stock belonging to the estate as he might have done under Civil Code of

7. See 11 R. C. L. 106.
10. See 11 R. C. L. 133.

1913, paragraph 907, where in so doing he did not fail to exercise such care as prudent and judicious men ordinarily bestow upon their own important affairs.

12. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S ACCOUNT HELD CHARGEABLE FOR MONEYS IMPROPERLY LOANED TO WIDOW OR EXPENDED ON HER BEHALF.—Administrator's account *held* chargeable for any money of estate improperly loaned to the widow or expended on her behalf, in view of Civil Code of 1913, paragraphs 866, 867, where estate was insolvent and money was paid without any authority from probate court.

13. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S DUTY TO SET OFF UNAUTHORIZED ALLOWANCES TO WIDOW AGAINST HER DISTRIBUTIVE SHARE.—If, in final distribution of an estate, it appears that unauthorized advances have been made to the widow out of the estate, it is administrator's duty to set off same against her distributive share.

14. EXECUTORS AND ADMINISTRATORS—REFUSAL TO ALLOW COMPENSATION TO ADMINISTRATOR HELD IMMATERIAL, IN SUIT BY SURETY ON ADMINISTRATOR'S BOND TO SET ASIDE JUDGMENT AGAINST ADMINISTRATOR.—In proceedings by surety on administrator's bond to set aside a judgment by estate against administrator, that court refused to allow any compensation to administrator *held* immaterial, since, if compensation had been allowed, it would not inure to benefit of surety, and, claim being personal to administrator he might waive it, as he did by dismissing appeal from judgment disallowing it.

See (1) 24 **C. J.**, p. 1039.    (2) 24 **C. J.**, p. 1011 (Anno.).    (3) 24 **C. J.**, p. 1011 (Anno.).    (4) 24 **C. J.**, p. 449.    (5) 24 **C. J.**, p. 216. (6) 24 **C. J.**, p. 154.    (7) 23 **C. J.**, p. 1166.    (8) 23 **C. J.**, pp. 1203, 1206.    (9) 23 **C. J.**, p. 1206 (Anno.).    (10) 23 **C. J.**, p. 1170 (Anno.). (11) 24 **C. J.**, p. 126.    (12) 24 **C. J.**, pp. 89, 91.    (13) 24 **C. J.**, pp. 483, 1011 (Anno.).    (14) 24 **C. J.**, pp. 973, 995.

APPEAL from a judgment of the Superior Court of the County of Apache. Andrew S. Gibbons, Judge. Judgment and order modified and as modified affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Mr. Dodd L. Greer, for Appellee.

ROSS, J.—The appellant, United States Fidelity & Guaranty Company, on May 7, 1920, signed as surety Stansell H. Greer's bond as administrator of the estate of Stansell Greer, deceased. Greer acted as such administrator until August 10, 1923, when he was removed by the court. Thereafter the appellee, Dodd L. Greer, was appointed administrator of said estate.

On February 21, 1924, Stansell H. Greer, describing himself as "outgoing administrator," filed his amended final account. Appellee filed exceptions thereto. A hearing was had on the said account and exceptions thereto on March 7th and 8th, 1924, and on April 2, 1924, the court made an order disallowing certain enumerated items which in the aggregate amounted to $5,933.55, and approved the account in other respects. At the same time judgment was ordered in favor of the estate against Stansell H. Greer in the sum of $5,933.55.

On May 17, 1924, after his attorneys had perfected an appeal from the order and judgment of April 2d, Stansell H. Greer, repudiating the right and authority of his said attorneys to appeal, filed his motion dismissing same, which motion was granted.

Thereafter, on May 23d, the appellant filed its petition in said cause setting forth, among other things, that it was surety on Stansell H. Greer's bond as administrator; that it had not been a party to any of the proceedings affecting the Greer estate; that certain portions of the judgment and order of April 2d injuriously affected its rights and interests; and moved that such portions be modified or set aside. On June 23, 1924, the court sustained a demurrer to petition and motion to modify the order and judgment of April 2d, and denied appellant's right to appear in the manner attempted or to question the

judgment and order against Stansell H. Greer. From this last order this appeal is prosecuted.

We are satisfied error was committed in denying the appellant the right to question by motion the correctness of the judgment and order against the outgoing administrator. The appellant was not a party to the proceedings concerning the allowance or disallowance of the administrator's account, yet it had a vital interest in the result thereof because under the general rule any adjudication in such a proceeding, even though the surety be not a party of record, is as binding upon the surety as upon the principal. Doubtless the appellant could have intervened in such proceeding and appealed from any judgment injuriously affecting its rights, but there would be no reason for its taking such a precautionary step as long as the principal on bond diligently and in good faith did what he could to prevent an unjust judgment from being entered against him and in favor of the estate.

In this case the administrator, in apparent good faith, insisted that his final account should be allowed as presented, but, when it was not allowed and on the contrary judgment was given in favor of the estate against him, he refused to prosecute it further, and dismissed the appeal started by his attorneys. If, in such exigency, the surety cannot, by motion, make itself a party of record in the case and thereby secure a footing to demand protection, it is practically without remedy, and could be greatly harmed by the collusive or fraudulent co-operation of an administrator and those representing the estate. We do not mean to intimate that there is anything in this record tending to show collusion or fraud, but to set out what might occur if the law should be declared to be against allowing a surety, after judg-

ment, from ever, for any reason, questioning it by motion filed in the case.

The course pursued by appellant is not without precedent in other jurisdictions, and, as we look at it, is founded upon reason and justice. In California it has long been the practice to allow one whose rights and interests have been injuriously affected by a judgment or an appealable order, given or made in an action or proceeding in which he is not a party, to make himself a party by moving to set aside such judgment or order. *In re McDermott's Estate,* 127 Cal. 450, 59 Pac. 783; *In re Elliott et al.,* 144 Cal. 501, 103 Am. St. Rep. 102, 77 Pac. 1109; *Luckenbach* v. *Laer,* 190 Cal. 395, 212 Pac. 918. And if such motion be denied, he may on appeal therefrom have the proceeding of which he complains reviewed for error. Id.

The disallowance of certain credits claimed by the administrator in his final account is assigned as error. We do not think, from the presentation of its case here, that the appellant contends the administrator's administration of the affairs of the estate was in all respects regular, legal or in accordance with his trust; but it advances, by way of excuse for the manner in which he conducted the affairs of the estate, a set of facts which it claims ought to estop the estate, or the principal beneficiary thereof, from requiring the administrator to make good any losses suffered by reason of his administration. It is necessary for us to state the facts so claimed by appellant.

Stansell H. Greer was the eldest of seven children of the deceased, and had just attained majority when appointed administrator. He was without business experience. His attorney was also the attorney for his mother, Ella Greer, wife of the deceased, and the attorney and local agent of the appellant. The estate was made up of community property. The appraisers

in December, 1920, appraised the estate at $32,061. The approved claims against the estate came to $28,819. It was realized that the assets, owing to the hard times that had come upon the people, would not be sufficient to take care of all the creditors if the estate were put through liquidation at once. Ella Greer, as the beneficiary in life insurance policies of her husband had received from insurance companies the sum of $12,000 or $13,000. Following her attorney's advice, she took assignments of claims against the estate to the amount of $10,000, paying face value therefor out of her insurance money. There were also assigned to her as trustee three other claims amounting to approximately $17,580, so that Ella Greer's claim against the estate in her own right and as trustee, amounted to $27,580. The attorney for the trustee accounts was also attorney for Ella Greer and the administrator. He drew up a written agreement by and between the administrator and Ella Greer, under which it was agreed that, upon the allowance by the court of her account and the three trust accounts the administrator should apply for an order of sale of the property of the estate and that at the sale she would bid in said property for the total amount of claims; that she would immediately, by a deed of conveyance, transfer all said property, including the homestead, to a trustee to secure the payment of the trust accounts, with eight per cent interest. The trust accounts, which the agreement undertook to prefer over Ella Greer's cash investment of $10,000 and the homestead, belonged $12,120.50 to Stockmen's State Bank, of which the attorney for Ella Greer and the administrator was cashier and manager, $3,172.33 to First National Bank, of Belen, New Mexico, and $2,-770.17 to M. Dannebaum, represented by the same attorney.

29 Ariz.—14

Of course this agreement was a mere *nudum pactum,* unenforceable, not only because of lack of consideration, but because of its palpable unfairness to Ella Greer; and we believe it was so treated by the lower court.

It is this arrangement—all admittedy the work of the attorney for the administrator, Ella Greer, the owners of trust accounts, and the local agent and attorney for appellant—that is now urged as a reason why the administrator should not be held to account to the estate in the respects hereinafter stated. This should be so, the appellant asserts, because Ella Greer, being the only creditor, and having knowledge of what the administrator was doing, and consenting thereto, had waived any irregularity, misconduct, or neglect of such administrator, and any loss suffered by the estate by reason thereof.

It may be that the sole creditor of an insolvent estate, with no homestead or family exemptions, could so act and behave towards its management and disposition by the administrator as to be regarded a party thereto and bound thereby, but such is not this case. There were three other creditors besides Ella Greer, and their claims represented nearly two-thirds of the debts owed by the estate. She acted only as trustee for such creditors in the presentation of their claims to the administrator and the court for allowance.

The agreement is also referred to by appellant as the family arrangement for a settlement of the estate, and appellant reminds us that this court, in *Faulkner* v. *Faulkner,* 23 Ariz. 313, 203 Pac. 560, spoke of such arrangements as "favorites of the law." It was no family arrangement. There was no controversy among the members of the family to be settled. It was apparent that the agreement was a mere cloak to prefer other creditors over the widow and the

minor children of the deceased. We cannot therefore see how the agreement gave the widow a status that could be made the basis of a claim of waiver or estoppel, or that it could in any manner relieve the administrator from the faithful performance of the obligations of his trust.

The administrator Stansell H. Greer remained in Arizona and acted as such officer until January 23, 1922, when he left for California without resigning or making any settlement with the estate or filing any account with the court.

The disallowance of each of the following named claimed credits is made the basis of complaint in error:

The administrator, out of the cash on hand, had paid in full approved claims to the amount of $1,200 without any order of the court. It appearing that the estate could not pay all of its creditors 100 per cent of their claims, the court refused to allow this credit, and ordered the administrator to make good any excess paid such creditors over what they were entitled to on a *pro rata* basis. We think the court's order proper.

The administrator sold an automobile belonging to the estate for $500. He collected $70 of the sale price, and used $20 thereof, and $50 he gave to his mother. The balance he did not collect. The statement is sufficient to fix liability on the administrator, and he cannot avoid it by showing that the sale price or the greater part thereof is still due and unpaid. It was his duty to get cash for the car, as he had no court order permitting its sale on credit.

The next item, the sale of a planer and house (personal property), was made in practically the same way. The consideration was $750, of which $600 was paid in labor and lumber. Of such lumber and labor the administrator used $400 and his mother $200

worth. The balance was never collected. Appellant claims that since no court order to sell property was obtained, the sale, under paragraph 905, Civil Code, was void, and that his successor could recover property, and the estate should be restricted to that redress. It does not become the administrator to try to avoid accounting for the sale price of property by pleading his own misconduct in failing to obtain an order authorizing the sale or in failing to collect the purchase price of such sale. When he sold the property and turned it over to the purchaser he became responsible to the estate for its value.

The court charged the administrator with $200, with interest at ten per cent from July 10, 1915, on account of his failure to collect a note of one J. W. Cordon for that sum. In the inventory, dated December 3, 1920, the appraisers returned this note as of no value. Upon the hearing, two of such appraisers, Albert F. Anderson and H. J. Platt, were witnesses. Anderson said of this note:

"The note of J. W. Cordon for $200, dated July 10, 1915, is no good. The value of it would not justify the expenditure of any sum to reduce it to judgment. It would be a waste of money."

Platt said:

"I thought the Cordon note was good, but some of the others thought not. . . . I wouldn't give much for the Danley and Cordon notes in cash. I thought they had just a prospective value. A man can generally get something out of a note."

F. W. Nelson, another witness, testified:

"I have known J. W. Cordon for 15 or 20 years. He has no property to my knowledge above his exemptions. I do not think the cost of reducing his note to a judgment would have been justified."

It seems to us that, to justify the charging of this note against the administrator, when it had been

appraised as worthless, the evidence of its value at the hearing should have been more substantial than "prospective," as Mr. Platt testified. The other two witnesses, it will be noted, considered the note was of no value. The appraisement in the inventory was *prima facie* evidence (11 R. C. L. 106, § 108; 23 C. J. 1166, § 383) of its value or lack of value, and we do not think the *prima facie* case was overcome by the testimony of the witnesses. On the contrary, it seems that the only positive testimony concerning value was in support of the appraisement.

In the inventory, the administrator was charged with forty shares of the stock of the Stockmen's State Bank, of St. Johns, valued at $4,200. This stock was pledged to the Round Valley Bank, of Springerville, as collateral to intestate's note for $1,000, and of course passed to the administrator burdened with that charge. Later the widow, Ella Greer, with her insurance money, bought the note held by the Round Valley Bank and took an assignment of it and the collateral. The note is included in her claim against the estate. The Stockmen's State Bank failed, or went into bankruptcy, on December 30, 1922. At the hearing the court refused to credit the administrator's account for such stock, held him responsible for the loss thereof, and directed that he pay to appellee, his successor, the sum of $3,200. Whether the court was right in this holding is the question. There seems to be no dispute as to the facts to be considered in its disposition. If Stansell H. Greer, from the time of his appointment as administrator in May, 1920, to the time of his removal, August 10, 1923, ever made any inquiry about such bank stock, or its value, it is not shown in the record. Neither is it apparent that inquiry or investigation would have warned him of the impending danger of its becoming worthless.

In 1920, 1921, 1922, owing to the shortage or hoarding of the money of the country, prices of all property, including bank stocks, were greatly depressed. It is shown that during 1920 there was one transaction in which a few shares of the Stockmen's State Bank were traded or exchanged at par, and in February, 1922, twenty shares of such stock were accepted on a cattle deal at par; but during the three years there were no cash sales, although several offers to sell had been made. Viewed from the standpoint of past events, it is apparent the administrator made a most serious mistake in not petitioning the court at the earliest possible moment for an order to sell all the property of the estate, as he might have done under paragraph 907, Civil Code, to pay family allowance, expenses of administration and the debts. But at the time it was hoped the low prices and business stagnation would soon pass, and that, by postponing the sale, much more could be realized for all concerned. In thus delaying, the administrator was not acting against the wishes of the creditors nor the heirs of the estate, but obviously in accordance with their desires. Everybody interested seemingly was satisfied to let things drag pending the return of better times.

Under the law the administrator was bound to the exercise of such care and diligence as prudent and judicious men ordinarily bestow upon their own important affairs, and for a failure to exercise such degree of care and prudence he and his surety are liable in damages. *McNab* v. *Wixom*, 7 Nev. 171. Schouler on Executors and Administrators, sixth edition, volume 3, in section 2484, says:

"Delays attending the sale of particular assets may not invariably be inexcusable, though loss or depreciation in value should result; provided the representative's course appears to have been honorable in

intent and not unreasonable, especially where the delay is due to a mistake of judgment and not to fraud.''

And in section 2482:

''A failure to change an investment, if in good faith and without negligence, does not of itself amount to a *devastavit*, though loss results, especially if the investment was made by the decedent.''

The bank stock in this case was bought by the deceased; it was his investment and evidently was by him regarded as sound. In December, 1920, it was appraised slightly above par, by appraisers residing in the locality of the bank and more or less familiar with its resources and business management. Under all these circumstances it seems to us it cannot be said the administrator violated the rule of law exacting of him the exercise of such care as prudent and judicious men ordinarily bestow upon their own important affairs. We do not believe the court should have surcharged the administrator's account with the appraised value of the forty shares of stock, and in doing so error was committed.

The administrator, without any order having been made for family allowance, from time to time during his administration made advances to the widow in the sum of $1,221.05, for which he claimed credit in his final account. It is provided in the statutes that exempt personal property and the homestead may be set apart for the use of the surviving husband or wife or in case of his or her death to the minor children (paragraph 866, Civ. Code), and, if such property be insufficient for the support of the widow and children, it is made the duty of the court or judge to make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances, during the progress of the settlement of the estate, which allowance, in case the

estate is insolvent, must not be for longer than one
year after the granting of letters of administration.
Paragraph 867, *supra.* Nothing was ever set apart
for the widow and children. Shortly after the ap-
pellee's appointment, an order for a monthly allow-
ance of $50, beginning with December, 1923, was en-
tered and under such order the widow was paid $200
and charged with $400 on account of advances made
by the outgoing administrator. The latter was sur-
charged with the balance of his advances to the
widow, amounting to $821.05, and of this appellant
complains. It is insisted the administrator should
have been credited with all advances made to the
widow, notwithstanding it was not paid under an
order of the court and was in excess of the amount
as finally fixed by the order of the court. Every
dollar paid the widow without authority from the
probate court was illegally paid, and stood as a
charge against the administrator. The estate being
insolvent, the creditors could very properly insist that
no money be paid the widow except upon an order
of the court, and then not for a longer period than
one year. The administrator is directly responsible
to the estate for any of its moneys improperly loaned
to the widow or expended on her behalf. *In re Fret-
well's Estate,* 154 Cal. 638, 98 Pac. 1058.

It is said by the appellant that the widow is the
only unpaid claimant and under the facts as disclosed
by the record will receive every cent realized for the
estate from any source, including the judgment ren-
dered against the outgoing administrator, and there-
fore the court's refusal to approve claim for all
advances to widow, or to give the outgoing adminis-
trator credit for said sum as a payment on the
widow's claim, "is so inequitable as to shock the
conscience." Of the claims of $27,580 against the
estate, the widow owns in her own right only $10,000;

the balance being in her hands for collection only. She is not the only creditor in fact. If in the final distribution of the estate it appears that unauthorized advances have been made to the widow out of the estate, it will be the duty of the administrator to set off the same against her distributive share. *Kinealy* v. *O'Reilly*, 28 Ariz. 246, 236 Pac. 716.

Appellant also complains because the court refused to allow any compensation to the outgoing administrator. As we look at it, this is a matter of no concern to the appellant. If the compensation had been allowed, it would not inure to the benefit of the surety any more than to any other potential or actual creditor of the administrator. The claim is personal to the administrator, and, if he chose to waive it, as he did by dismissing the appeal from the judgment disallowing it, he could do so. If the administrator were himself here contending for compensation for the services rendered the estate, it would be a very different question.

All other assignments of error have been disposed of in our rulings herein, and for that reason we do not discuss them.

We think the court erred in surcharging the administrator with the Cordon note and the forty shares of the stock of the Stockmen's State Bank; that the judgment otherwise should be affirmed.

The cause is accordingly remanded, with directions that the judgment be modified to conform with this opinion.

McALISTER, C. J., and LOCKWOOD, J., concur.