[Civil No. 4103.   Filed March 25, 1940.]

[100 Pac. (2d) 589.]

JACOB BARTH, Outgoing Administrator of the Estate of C. F. MONTROSS, Deceased, Appellant, v. EARL PLATT, Administrator of the Estate of C. F. MONTROSS, Deceased; Mrs. GEORGE KRAMER and Mrs. BARBARA S. PUGH, Appellees.

Mr. Terrence A. Carson and Mr. Maurice Barth, for Appellant.

Mr. Earl Platt *in Propria Persona.*

No appearance for other appellees.

McALISTER, J.—C. F. Montross, a resident of St. Johns, Arizona, and the owner and publisher at that place of the "St. Johns Observer," a weekly newspaper, died intestate on February 23, 1937, leaving no relatives in this state, and the following day appellant, Jacob Barth, was appointed special administrator, and a month later administrator of the estate, which consisted principally of the newspaper and the equipment with which it was published. On August 9, 1937, the order revoking his letters of administration was made by the superior court of Apache county upon the petition of Earl Platt. At the same time and upon the latter's petition letters were ordered issued to him upon his filing a bond in the sum of $5,000, which was done on August 16, 1937. On August 25, 1937, Barth appealed from the order revoking his letters and appointing Platt administrator by giving notice and filing ·a *supersedeas* bond in the sum of $1,500, and on May 2, 1938, both orders were affirmed by this court. *Barth* v. *Platt,* 52 Ariz. 33, 78 Pac. (2d) 995. On the 18th of April, 1938, two weeks before the order of affirmance, Jacob Barth filed his final account and report as administrator of the estate and to that report the newly appointed administrator, Earl Platt, filed exceptions on June 7, 1938, and two claimants, Mrs. George Kramer and Mrs. Barbara S. Pugh, did so a few days later. Many of these were sustained and from the order upholding them the former administrator, Jacob Barth, appeals.

According to the final account and report the estate consisted of the weekly newspaper, the "St. Johns Observer," the equipment with which it was published, and certain other items of personal property, including an automobile and bills due the "Observer" on

account of advertising and subscriptions and was appraised at $1,365.

Claims totaling $2,334.25 were presented to the administrator for allowance and all of these, except two amounting to $582.76, were approved. These included $660.30 for expenses of last sickness and burial, $422.80 for administration, $58 for two preferred labor claims and $610.30 by general creditors. In addition to these the Barth Mercantile Company claimed a landlord's lien amounting to $540 as rental for three years at $15 per month for the building in which the "Observer" was published and also a chattel mortgage on the equipment of the "Observer" in the sum of $1,120, though no claim for either of these items was filed with the administrator; $145 in fees was asked for the services of the special administrator.

The amount derived from the sale of the property, according to the account and report was $2,500, one-half of which was received for the newspaper equipment and the other half for its good will, accounts receivable and some other personal property.

The disbursements, according to the report, were $660.30 for the expenses of the last sickness and burial; $58 for two preferred labor claims and $422.80 expenses of administrator. In addition to these the administrator paid the Barth Mercantile Company $540 for rent and satisfied its landlord's lien, and also $791.90 in satisfaction of a chattel mortgage on the equipment. None of the claims of the general creditors amounting to $610.30, was paid.

The new administrator filed objections to many of the items of the account and report, among which were these: First, continuing the decedent's business without authority from the court and without accounting to the court for the amount received and expended in doing so; second, the sale of the property of the estate

at a date subsequent to that on which the administrator's letters had been revoked and without first filing a petition and obtaining the authority to sell the property; third, the payment to the Barth Mercantile Company of $540 for rent to release the landlord's lien and $791.90 to satisfy the chattel mortgage on equipment, both having been paid without authority from the court and without the presentation of claims. He asked that the court declare these payments invalid and disapprove them; that the retiring administrator be required to deliver to the new administrator all the property received by him as administrator; that he be charged rent for the use of the estate property without authority from the court during the period he used it and that any amount found due him from the estate be offset by amounts found due the estate by him and that the alleged payments of these two items be disallowed.

After taking much evidence on the account and report and the exceptions thereto, the court made the following order settling the account: First, it ordered that credit for $540 to the Barth Mercantile Company for rent be approved but that this be offset and paid by an equal amount alleged in the exceptions and found by the court to be due the estate from the Barth Mercantile Company, and that any lien existing by reason of such rent be discharged; second, it denied with prejudice credit for $1,120 to the Barth Mercantile Company for the reason that no claim was ever presented to the administrator nor authority from the court to pay the same or any part thereof obtained; third, that credit by Barth for claims against the estate as special or general administrator or individually, except those specifically allowed, be offset and fully paid by amounts set out in the exceptions and shown to be due and owing the estate by him, including

rent for the use of the estate property in carrying on decedent's business without authority of the court; fourth, that the administrator be denied all claims for expenses in connection with the operation of decedent's business; fifth, that the administrator be allowed $145 for expenses as special administrator but that this amount be offset by $101.08 due the estate in the lifetime of decedent and collected by Barth, leaving a credit balance approved in the sum of $44.72; sixth, that the sale of the estate property to Isaac Barth on October 2, 1937, is void and of no effect and, therefore, set aside for the reason that it was made without the filing of a petition or the obtaining of an order authorizing it, without the giving of proper legal notice, and at a time when the outgoing administrator, having been theretofore removed, had no authority to act for the estate; seventh, that the retiring administrator deliver forthwith to the present administrator the property comprising the estate, including the newspaper equipment, the books, the records and all other things of value received by Jacob Barth as administrator.

The first complaint lodged against the court's action is that it had no jurisdiction to appoint Earl Platt administrator of the estate, because no application for his appointment was filed in writing or at all and no notice thereof was posted or published as required by law. The appointment was made on August 16, 1937, upon the revocation of the letters theretofore issued to Barth and was approved by this court in *Barth* v. *Platt, supra,* hence, the correctness of that order is not subject to attack collaterally.

It is urged that the court erred in admitting the exceptions of the new administrator, Platt, to the final account and report of Barth, for the reason that he was not a party interested in the estate within the

meaning of the statute since, though legally appointed, he was an administrator *de bonis non*. This contention is without merit. Barth's letters were revoked during the course of administration and long before the accounts of the estate were settled, upon the ground that he had mismanaged the estate, and upon the entrance of this order and on his petition Platt was appointed general administrator and as such it became his duty to object to any portion of the final account and report filed by Barth after his letters were revoked that was detrimental to the estate. He had charge of the estate from the date of his qualification as administrator and upon him rested the duty of protecting it in the interest of the creditors and those to whom any balance that might remain after the accounts were settled, should be distributed. This made him a party interested in the estate within the meaning of the statute. Bancroft's Probate Practice, vol. 3, sec. 985, p. 166; *United States F. & G. Co.* v. *Greer,* 29 Ariz. 203, 240 Pac. 343. *In re Spanier's Estate,* 120 Cal. 698, 53 Pac. 357, 359, the court said:

"Appellant's contention that the present administrator had no standing to contest the account, because he is not a person interested in the estate, is not maintainable. It is the duty of an administrator to protect the estate against unlawful claims of creditors; and it is also the duty of the court to do so at the suggestion of any person, or on its own motion. . . . "

*In re Loheide's Estate,* 17 Cal. App. 475, 120 Pac. 56, 61, the court said, what is equally true here, that

"it was the duty of the court to satisfy itself of the correctness of the account (*Estate of More,* 121 Cal. 635, 639, 54 Pac. 148); and if it found the administrator justly chargeable with money it would be the duty of the court to charge him with it, whether or not called to the court's attention in the exceptions taken."

Section 4058, Revised Code of 1928, empowers the succeeding administrator of an estate to cite an administrator whose letters have been revoked to account before the court, in the same manner he might have been cited by any other person interested in the estate during the time he was administrator.

The rest of the assignments of error we cannot examine and pass upon without the testimony that the court had before it when it ruled upon the final account and the exceptions thereto. Unfortunately for the appellant the transcript of the testimony is not properly before the court. The order appealed from was dated November 30, 1938. The transcript of the testimony was not filed with the clerk of the trial court until March 27, 1939, or four months thereafter. Under the unvarying rule of this court in many cases, we may not consider the testimony. In the very recent case of *Primrock* v. *Wilson, ante,* p. 192, 100 Pac. (2d) 180, we followed the rule stated in *In re Scott,* 21 Ariz. 332, 188 Pac. 260, which held that the reporter's transcript was not a part of the record and could not be considered unless filed within sixty days after the entry of judgment or within such additional time as may be stipulated or granted by the court. There is no stipulation of the parties or order of the court extending the time within which to file the transcript. It is true that counsel for appellee Platt, in a letter which we find in the files addressed to the clerk of the trial court, undertook to waive this dereliction of the appellant, but under the rulings of this court the failure to file the transcript of the testimony within the time prescribed by law is jurisdictional and may not be waived. See section 3864, Revised Code of 1928, and cases cited thereunder.

The order appealed from is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.