EUGENE STOCK, APPELLANT, V.
LOUIS A. MEISSNER AND WESTERN SURETY COMPANY,
A CORPORATION, APPELLEES.

309 N.W.2d 86

Filed August 7, 1981. No. 43412.

R. Steven Geshell of Robak & Geshell for appellant.

Patrick A. Brock for appellees.

Heard before BOSLAUGH, CLINTON, and BRODKEY, JJ., and WOLF and BURKHARD, District Judges.

BURKHARD, District Judge.

This is an action by the seller of grain against a grain dealer and his bonding company for damages for the alleged failure of the grain dealer to pay the fair market value for grain delivered to the dealer.

From February 13 through February 20, 1974, the

plaintiff-appellant, Eugene Stock (hereinafter called Stock), and his assignors delivered to defendant-appellee Louis A. Meissner (hereinafter called Meissner), a licensed grain dealer buyer, 4,072.32 bushels of corn pursuant to an oral contract. The grain was to be paid for by Meissner on demand. During the period February 13 to 20, 1974, Meissner was bonded by Universal Surety Company (hereinafter called Universal), which bond was canceled on September 21, 1975. Meissner then became bonded by defendant-appellee Western Surety Company (hereinafter called Western), effective September 18, 1975.

On December 28, 1978, Stock made his first demand on Meissner for the payment of the corn delivered in February of 1974. Meissner stated that Stock had not only been paid, but he was overpaid, because not all of the corn delivered was of the quality contracted for. Stock then filed suit against Meissner and Western on February 12, 1979, for $8,144.64, plus interest, attorney fees, and court costs. The defendants, by their answers, alleged the affirmative defenses of the statute of limitations and the statute of frauds. Western further alleged in its answer that it was not a surety on Meissner's transactions at the time of the deliveries involved herein, i.e., February of 1974.

Defendants filed a motion for summary judgment. The trial court, on March 24, 1980, sustained the motion as to Meissner on the ground that the claim of Stock was barred by the 4-year statute of limitations on oral contracts, Neb. Rev. Stat § 25-206 (Reissue 1979), and sustained the motion as to Western on the ground that it was not the surety for Meissner at the time of the transactions in February of 1974. On April 18, 1980, Stock's motion for a new trial was overruled, and this appeal was then taken. We affirm the ruling of the trial court.

Stock sets forth several assignments of error, but the basic contention is that the court erred in finding that there were no genuine issues of material fact and in

finding that the defendants were entitled to a judgment of dismissal as a matter of law.

The issue as regards Meissner is when Stock's cause of action against Meissner accrued so as to start the running of the 4-year statute of limitations.

In *Luikart v. Hoganson,* 135 Neb. 280, 281 N.W. 27 (1938), action was commenced on December 26, 1936, on a promissory note dated May 26, 1931, which note was payable "on demand after date." Hoganson, the maker, permitted judgment by default to be entered against him. The endorsers demurred to plaintiff's petition on the ground that as to them the action was barred by the 5-year statute of limitations. The demurrer was sustained, and plaintiff appealed to this court. Plaintiff argued that the statute of limitations did not begin to run from the date of the original note but only from the date of actual demand, since payment was to be made "on demand after date." This court, in ruling that the demurrer was properly sustained and that the statute of limitations had run, stated that plaintiff-payee could have brought an action on the demand note the day after it was executed and delivered, but the action was brought more than 5 years thereafter. The cause of action thus accrued on May 27, 1931. The court stated as follows: "It is well settled law here and elsewhere that the statute of limitations begins to run when a cause of action accrues. . . . By failing to make a demand, payee in a note payable on demand cannot do away with the statute of limitations." *Id.* at 283, 281 N.W. at 28. See, also, *Melville Lumber Co. v. Scott,* 135 Neb. 379, 281 N.W. 803 (1938); *Grant v. Williams,* 158 Neb. 107, 62 N.W.2d 532 (1954); *Alexanderson v. Wessmann,* 158 Neb. 614, 64 N.W.2d 306 (1954); 54 C.J.S. *Limitations of Actions* § 201 (1948).

It is clear from this court's prior holdings that Stock's cause of action accrued on February 21, 1974, the day demand *could* have been made. Suit was not filed by Stock until February 12, 1979, and thus his claim against Meissner is outlawed by the applicable 4-year

statute of limitations. The trial court was correct in sustaining Meissner's motion for summary judgment against Stock.

The issue as regards Western is whether or not it could be liable for Meissner's alleged nonpayment for the grain delivered in February 1974, when the effective date of its bond is September 18, 1975. Stock contends that there is such liability and that the statute of limitations as regards Western is 10 years under Neb. Rev. Stat. § 25-209 (Reissue 1979). The pertinent part of Western's bond is as follows: "'NOW THEREFORE, this obligation is such that if . . . the said Principal(s) [Meissner] . . . his agents and employees will pay the purchase price of such grain *upon demand of the owner or seller* . . . then this obligation to be void, otherwise, to remain in full force and effect.'" (Emphasis supplied.)

Stock argues that the bond was breached, and the cause of action against Western accrued, when he made demand on Meissner for payment on December 28, 1978, and Meissner allegedly failed to make payment.

It is true that Western was the bonding company on December 28, 1978. However, it is only logical and practical to construe the language "upon demand of the owner or seller" in the bond to mean when the owner or seller had the *right* to make demand for payment. This *right,* as we have stated, accrued on February 21, 1974, when Stock's cause of action against Meissner accrued. It is not logical that the cause of action against Meissner would accrue on February 21, 1974, but not against his bonding company until December 28, 1978. Under Stock's theory, assuming the 10-year statute of limitations would be applicable, Stock would have until December 28, 1988, to file suit against Western on transactions that occurred almost 15 years before.

"A bond does not cover defaults of the principal occurring prior to the effective date of the bond, unless the bond expressly provides otherwise . . . for it cannot be assumed that the surety intended to be bound by the

past delinquencies of the principal." *Department of Agriculture v. Ackerman*, 34 Ill. App. 3d 796, 797, 341 N.E.2d 48, 49-50 (1975), *rehearing denied* January 2, 1976. See, also, 74 Am. Jur. 2d *Suretyship* § 29 (1974).

We therefore conclude that Western is not liable for any nonpayment by Meissner arising out of the grain transactions in February 1974, and the trial court acted correctly in sustaining Western's motion for summary judgment against Stock.

Where, as in this case, there are no genuine issues as to any material fact and defendants are entitled to judgment as a matter of law, summary judgment may be properly granted. Neb. Rev. Stat § 25-1332 (Reissue 1979).

Appellant Stock's assignments of error are without merit. The judgment of the trial court is affirmed.

AFFIRMED.

CLINTON, J., concurs in result.