144 Ariz. 168 (1985)
696 P.2d 720
In the Matter of the ESTATE OF Sebe MUSGROVE,
Stanley MUSGROVE, Personal Representative, Appellant,
v.
Belvin BROWN, Claimant-Appellee.
No. 1 CA-CIV 6774.
Court of Appeals of Arizona, Division 1, Department C.
January 8, 1985.
*169 Engler, Engler & Weil by John A. Weil, Yuma, for personal representative, appellant.
Thaddeus G. Baker, P.C. by Barton L. Baker, Yuma, for claimant-appellee.
OPINION
JACOBSON, Chief Judge.
The primary issue on this appeal is when does the statute of limitations begin to run on an unwritten promise to pay money when no definite time is set for repayment.
Belvin Brown filed a claim on April 1, 1981 against the Estate of Sebe Musgrove for $22,347.65 based upon an oral agreement which was allegedly entered into in 1962. This matter was tried to the court which entered judgment in favor of Brown on his claim. Following a denial of his motion for new trial, the personal representative filed a timely notice of appeal to this court.
The estate has raised two issues on appeal: (1) whether the trial court abused its discretion in admitting the testimony of Brown in the face of the Dead Man's Statute, A.R.S. § 12-2251; and (2) whether the claim based on an oral debt is barred by A.R.S. § 12-543, the applicable statute of limitations. We find that A.R.S. § 12-543 is a bar to this action and dispositive of this appeal. Therefore, we do not decide whether Brown's testimony was properly admitted.
This court must view the evidence in a light most favorable to upholding the judgment. Davis v. Tucson Arizona Boys Choir Society, 137 Ariz. 228, 669 P.2d 1005 (App. 1983). So viewed, and assuming arguendo the admissibility of Brown's testimony concerning his conversations with the decedent, the record reflects the following. The basis for Brown's claim was an oral contract whereby Musgrove agreed to repay a debt owed Brown of $8,984, arising out of the sale of cattle owned jointly by Brown and Musgrove, from which Musgrove received the proceeds. The parties agreed that payments on the debt would be made from time to time and that the principal would bear annual interest at the rate of 6%. The parties modified their agreement in 1972 to increase the interest rate to 8%. Musgrove made the following payments to Brown: $400 in December 1962; $500 in 1964; $500 in 1968; $750 in 1972; and $600 in 1974. Additionally, Musgrove's daughter, Ruth Naomi Stevens, paid Brown $1000 on March 1, 1978. However, there was no evidence that she paid this money as an agent of her father. To the contrary, the evidence was that she paid this money from her own bank account and that Sebe Musgrove strenuously objected to that payment.
On appeal both parties agree that the statute of limitations applicable to this transaction is A.R.S. § 12-543, which provides in pertinent part:
There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions.
1. For a debt where the indebtedness is not evidenced by a contract in writing....
The parties disagree as to when the cause of action accrued on the oral contract and thus triggered the running of the statute of limitations. The general rule is that a cause of action accrues whenever one person may sue another. Cheatham v. Sahuaro Collection Service, Inc., 118 Ariz. 452, 577 P.2d 738 (App. 1978); Rogers v. Smith Kline & French Laboratories, 5 *170 Ariz. App. 553, 429 P.2d 4 (1967). Brown characterizes the agreement as one which contemplated that demand would not be made until long into the future and thus the statute did not begin to run until demand was made. The estate characterizes the agreement to be payable on demand or an agreement which was silent as to repayment. The trial court stated:
The court finds that there was an oral agreement between claimant and the decedent, that the decedent owed claimant $8,984 and that he would make payments on this indebtedness from time to time. It was also agreed that the principal would bear interest at the rate of 6% per annum. In 1972 decedent agreed to pay 8% interest on the principal balance. There was ample consideration for each of these agreements.
No demand was ever made upon decedent for full payment that was not withdrawn after decedent persuaded claimant to continue the same arrangement. Decedent never refused to pay.
It appears that the trial court interpreted the agreement as one for the loan of money on demand without a fixed time for repayment. Further, the court appears to have implied that demand was a prerequisite for bringing suit.
We first note that most of the trial court's findings are mixed questions of law and fact or are legal conclusions. An appellate court is not restricted to construing the evidence most favorably to support such a judgment. Tovrea Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966). Rather, this court may draw its own legal conclusions from facts found or inferred in a judgment of the trial court and is not bound by findings of the trial court in mixed questions of law and fact. Huskie v. Ames Bros. Motor and Supply Co., 139 Ariz. 396, 678 P.2d 977 (App. 1984); Guirey, Srnka & Arnold, Architects v. City of Phoenix, 9 Ariz. App. 70, 449 P.2d 306 (1969).
Brown's testimony at trial as to the terms of the contract was, at best, confusing. Louis Pendergast, the only witness who corroborated the existence of a contract, contradicted Brown concerning the terms of that contract. Pendergast expressly testified that the parties agreed that the debt was to be repaid in two to three years. Reviewing the entire transcript and recognizing that the trial court apparently rejected Pendergast's version of the contract, we find that the contract was indefinite as to the time for repayment and further that demand was not expressly made a condition precedent to the right to bring suit. We further conclude that there was no evidence that at the time the agreement was made in 1962 that the parties agreed to postpone repayment until long into the future. In fact, the first payment occurred only a few weeks following the initial agreement. Brown testified as to repayment as follows:
Q. [By Mr. Baker]: Did you ever enter into any kind of agreement with Mr. Musgrove regarding your half of that money?
A. Yes. Mr. Musgrove wanted to pay me interest on it, he offered to pay me 6%. That's what we was paying at the bank at that time and I agreed to that.
Q. You heard Mr. Pendergast regarding a meeting; with what you are testifying to now, was that the same meeting?
A. Yes.
Q. Where did that take place?
A. Not 6% at that time Buster was there with us, before I got ready to move, before I move, you see. Mr. Musgrove told me he'd give me 6% before I left there and says, I will pay you some every year on it, but never was direct date from the time Mr. Musgrove and myself talked that he would pay me, never did come no direct date.
* * * * * *
Q. Mr. Brown, to your understanding in 1962, when this agreement was made, what was your understanding of when all of the money would be paid?
A. Never was no definite date set, he said he would pay me 6% interest, pay me a little whenever he could. Because *171 back in them days, it was really tough for Mr. Musgrove to make a go.
There was no testimony that in 1962 the parties specifically made demand by Brown a condition precedent to his right to repayment. We, therefore, treat this contract as one which was due upon demand or a contract which is silent as to repayment. In either case, we hold the cause of action would have accrued at the time the agreement was made in December, 1962.
If we consider the agreement to be a demand obligation, while we find no Arizona case law directly on point, there is a substantial body of law in other jurisdictions that a demand obligation is due immediately without demand and the statute of limitations commences to run at once. See e.g., Schnug v. Schnug, 203 Kan. 380, 454 P.2d 474 (1969); Stock v. Meissner, 209 Neb. 636, 309 N.W.2d 86 (1981); Hopper v. Hemphill, 19 Wash. App. 334, 575 P.2d 746 (1978). See generally Annot. 159 A.L.R. 1021 (1945). The rationale for this rule is to prevent a creditor from extending the limitations period by failing to make a demand. This rule would, of course, not be applicable where the parties expressly contract that demand is a condition precedent. However, as previously indicated, there was no evidence of any such agreement in the instant case. Thus, even if we were to agree with the trial court's apparent conclusion that payment was due upon demand, the statute of limitations would have commenced when the contract was made. See generally 54 C.J.S., Limitation of Actions, § 201(a)(2)(c) (1948); 51 Am.Jur.2d, Limitation of Actions §§ 113, 127, 128 (1970).
However, we are of the opinion that the agreement can more accurately be described as one which is silent as to the time for repayment. Again, we find no Arizona cases which directly decide when the statute of limitations begins to run on such a contract. Different approaches have been taken by jurisdictions which have considered this precise issue.
It is the majority position that such an agreement is viewed as a loan repayable on demand and the statute of limitations commences when the agreement is made. See e.g. Sturdivant v. McCorley, 83 Ark. 278, 103 S.W. 732 (1907); Hodgson v. Keppel, 211 Iowa 795, 802, 232 N.W. 725, 727-728 (1930); McCandlish v. Estate of Timberlake, 497 S.W.2d 191, 195 (Mo. App. 1973); Akre v. Washburn, 92 N.M. 487, 489, 590 P.2d 635, 637 (1979); Ricker v. Ricker, 201 Or. 416, 422, 270 P.2d 150, 153 (1954); Johnson v. Wold, 475 P.2d 714, 716 (Wyo. 1970).
Other jurisdictions have held that silence as to time of repayment should be treated as a missing term in the contract to be supplied by the court. Such courts have held that the statute of limitations period starts to run a reasonable time after the loan had been made, since repayment would be expected after such a reasonable time period. See Rees v. Heyser, 404 N.E.2d 1183 (Ind. App. 1980); Stromblad v. Wilderness Adventurer, Inc., 577 P.2d 918 (Okla. App. 1978).[1] Such an approach results in "reasonableness" becoming a question of fact in light of all the circumstances disclosed by the evidence.
A discussion of the varied approaches where a contract is silent as to repayment is contained in Annot., 14 A.L.R.4th 1385 (1982). After reviewing these cases, we are persuaded that the better approach is the majority position holding that where the contract is silent as to time of repayment, a cause of action accrues at the time the contract is made.
Statutes of limitations are enacted to relieve defendants and the courts from litigation of stale claims because evidence may have been lost or witnesses' memories faded. It is a necessary policy for the orderly administration of justice. Brooks v. Southern Pacific Company, 105 Ariz. *172 442, 466 P.2d 736 (1970). We are not persuaded by cases from jurisdictions which permit a creditor to toll the statute of limitations by proving that he waited a "reasonable" time to seek repayment. This policy involves the courts in the kind of evidentiary problems which statutes of limitations were intended to preclude and emasculates the statute itself. Therefore, we hold that where the contract is silent as to the time of repayment, the statute of limitations begins to run at the time the loan is made.
Brown has argued alternatively that even if the statute of limitations were held to be a bar to this action, the estate should be estopped from raising that defense. Brown contends that Musgrove's actions in ensuring him of repayment, induced him to forbear seeking to enforce his contractual rights. While arguing in general terms that Musgrove's "promises" induced him not to bring suit, he cites to no specific promises occurring prior to the expiration of the statutory period in 1965. Detrimental reliance is an essential ingredient of estoppel, without which there can be no estoppel. See, e.g., Knight v. Rice, 83 Ariz. 379, 321 P.2d 1037 (1958); Noble v. Noble, 26 Ariz. App. 89, 546 P.2d 358 (1976). See also Freeman v. Wilson, 107 Ariz. 271, 485 P.2d 1161 (1971). We also note that Brown specifically testified that the reason he did not bring an action earlier was that he thought it was to his advantage to wait. Further, any alleged acknowledgment of the debt by Musgrove after the passing of the statutory period was inadmissible unless in writing and signed by Musgrove. See A.R.S. § 12-508.[2]
There were two partial payments made within the statutory limitations  $400 in December, 1962 and $500 in 1964. Brown appears to argue that these partial payments were sufficient to create an estoppel. However, partial payment alone will not remove the bar of the statute of limitations. Cheatham, supra. Nor has Brown cited any authority in support of a contention that part payment, by itself, constitutes an estoppel.
We hold that the statute of limitations commenced to run on the oral debt at the time it was made in December, 1962. Brown did not initiate this law suit until April of 1981, some 19 years later and well after the three-year limitations period. We further find that Brown failed to present any evidence to the court sufficient to estop the estate from raising the statute of limitations as a defense. Accordingly, we hold that Brown's claim was barred by A.R.S. § 12-543 and reverse the order of the trial court granting judgment in favor of Brown against the estate. The matter is remanded with directions to enter judgment in favor of the appellant.
EUBANK, P.J., and OGG, J., concur.
NOTES
[1] There are situations where repayment has been found expressly or impliedly conditioned upon the debtor's ability to repay. This question has been discussed in Annot., 28 A.L.R.2d 786 (1953). We find that the evidence would not support such a condition as part of the agreement which is the subject of this law suit.
[2] A.R.S. § 12-508 provides:

When an action is barred by limitation no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the action out of the operation of the law, unless the acknowledgment is in writing and signed by the party to be charged.