812 P.2d 1141

**In the Matter of the ESTATE OF Edna R. IVESTER, Deceased.**

**Jack BROWN and William Blankenship, Plaintiffs/Appellants,**

**v.**

**ESTATE OF Edna IVESTER, Defendant/Appellee.**

**No. 2 CA–CV 90–0267.**

Court of Appeals of Arizona, Division 2, Department B.

May 30, 1991.

Michael A. Edson, Tucson, for plaintiffs/appellants.

Neis & Callaway, P.C. by William H. Callaway, Tucson, for defendant/appellee.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from an order completely settling and closing the estate of Edna Ivester. Appellants are the devisee and beneficiary of an allegedly valid will that was not probated.

## FACTS

Edna Ivester shared her life and her trailer with her friend, Jack Brown, for over ten years. In June 1978, at her nephew's request, Edna was taken to Kino Hospital for a court-ordered evaluation because she had been behaving bizzarely. Physicians' reports, made part of the record, state that Edna had chronic organic brain syndrome and showed secondary symptoms of paranoid ideation and negativism. The court thereafter found Edna to be a gravely disabled person under A.R.S. § 36–520, and appointed as her guardian Joe Blankenship, apparently a friend. She was released to Joe's care in July and resumed living with Jack in the trailer.

In November 1978, Edna executed a will leaving her entire estate to William Blankenship, Joe's brother, and directed him "to provide Jack Brown with a place to live with a monthly living expense so long as my beloved Jack Brown does live or untill [sic] my property is exhausted." The will further directed that William, who read Jack's mail to him because he could not

read, was to help Jack obtain social security benefits and was to withhold payment from Jack in any month that he drank alcohol. The will designated Joe as personal representative of Edna's estate. Edna told William about the will and its provisions, but William said he did not see the will until 1988, ten years after Edna's death.

Edna died on December 8, 1978. On December 11, Emily Simmons, Edna's niece, was appointed special administrator to file an inventory of Edna's safety deposit box. Upon receiving Edna's will from Jack, Joe had it filed in probate court on or about January 31, 1979. On March 12, 1979, Jack filed a demand for notice. He listed his address as Alagainia Street (the correct spelling is Allegheny).

Nothing was done in regards to the estate for the next year. In April 1980, the court examined the guardianship and appointed the public fiduciary as special administrator. It ordered Joe to appear to show cause why he had not made an accounting of the estate. Thereafter, in July, Joe petitioned for appointment as personal representative pursuant to the will and also for formal probate of the will. At an October 1980 hearing, however, Joe withdrew both petitions and renounced his priority under the will. He described the paperwork as overwhelming and said he wanted the public fiduciary to take over. His guardianship role was subsequently terminated.

In December 1980 Emily filed an Application for Appointment of Personal Representative, which stated in paragraph 7:

> After the exercise of reasonable diligence, applicant is unaware of any unrevoked testamentary instrument executed by decedent relating to property having a situs in this state, except ... *a possible Will which may have been prepared and executed after decedent had been declared incompetent.*

(Emphasis added.) A copy of the will was attached to the application. Although not so designated, the application made allegations required for a formal petition for adjudication of intestacy, determination of heirs and appointment of personal representative, and Emily requested a hearing in formal testacy proceedings. In accordance with A.R.S. § 14–1401, Emily filed a proof of notice which included as those entitled to notice of proceedings, Joe Blankenship, 2627 Benson Highway, and Jack Brown, 1341 W. Alagainia. William, who had the same address as his brother, was not listed as an interested party.

A minute entry dated January 6, 1981, (it is incorrectly dated 1980) reflects that a hearing was held on the petition for appointment of personal representative during which Emily was appointed personal representative and her attorney was directed to prepare the formal order. There was no objection. Apparently no one other than Emily and her attorney attended the hearing.

On May 14, 1981, the court commissioner signed the formal order entitled Appointment of Personal Representative. The court found that notice had been given as required and that Edna died leaving certain specified heirs; neither William nor Jack were listed. Although the court did not make a finding that Edna died intestate, the order was essentially, an order of intestacy, determination of heirs and appointment of personal representative. Emily did not send William or Jack notice of her appointment.

To further complicate this matter, letters of personal representative and acceptance for a testate estate were issued to and signed by Emily in June 1981, and she filed a $35,000 bond, which represented the value of the estate's assets.

Between 1981 and 1988, Emily administered the estate and distributed most of the assets to the named intestate heirs. However, she continued to pay property taxes on Edna's trailer and Jack continued to live in the trailer, rent free. In 1988 Emily sent Jack, who was 85 years old, an eviction notice and filed a petition for an order of complete settlement of the estate. Jack contacted William and this litigation ensued.

## PROCEDURE BELOW

On December 14, 1988, Emily petitioned the court for an order of complete settlement of the estate. A notice was sent to Jack, but not to William. William, as sole devisee of the 1978 will, cross-petitioned for formal probate of the will and for an order vacating Emily's appointment. Emily moved for summary judgment or to dismiss William's petition. William, joined by Jack, then filed a cross-motion for summary judgment on the issue of Edna's testamentary capacity. At the hearing on the motions, the trial court denied both, but found that an issue of fact existed on the question of notice to William. At the trial, Joe testified that he had never talked to William about the estate and that he was overwhelmed by the responsibilities of executor and withdrew simply because he wanted the public fiduciary to take over. Joe said he did not receive a copy of Emily's application for appointment and that the proof of notice listed his address incorrectly by leaving off the word East before Benson Highway. He also said that 180 other people lived on the 18–acre recreation area owned by his family and that without a box number on the correspondence it was unlikely he would receive it.

William testified that Edna had told him about the will but that he had never seen it or discussed it with anyone else until 1988. He said his home address in December 1988 was the same as Joe's, but that he had neither received nor seen any notices regarding the estate during that time.

Emily testified that she did not offer the will for probate because her aunt was incompetent at the time of execution and no one requested that she admit it to probate. She said she did not send any notices to William and since her appointment she had not spoken or written to Joe, William or Jack.

The trial court denied William's petition and made the following findings in its July 3, 1990 order:

1. A Will of decedent dated November 21, 1978, was filed with the Court on January 31, 1979, but was never admitted to probate;

2. On January 6, 1981, hearing was held on Emily Simmons' Application (petition) for Appointment of Personal Representative;

3. An order pursuant to that hearing was entered on May 18, 1981, which implicitly makes a finding of intestacy;

4. Proof of Notice filed on December 4, 1980, shows that notice of the petition was mailed to Jack Brown and Joe Blankenship but not to William Blankenship;

5. Evidence presented at trial is sufficient to show that William Blankenship had actual notice of the proceedings on January 6, 1981, and the May 18, 1981, order prior to the proceedings and prior to the time allowed to object to the order and to reopen the matter.

## ISSUES ON APPEAL

William and Jack contend that the trial court committed reversible error by denying their petition and finding specifically that William had actual notice of the January 6, 1981 formal hearing and the appointment order of May 18, 1981 and that the order made an implicit finding of intestacy. They also contend that the trial court abused its discretion by denying their motion for summary judgment on the issue of Edna's testamentary capacity. Emily did not cross-appeal from the denial of her motion for summary judgment.

## NOTICE

■ On appeal neither party disputes the fact that William, as devisee of the will, was an interested party, entitled to notice under the probate statutes.

The issue of notice is a mixed question of law and fact because we are concerned with not only whether William received notice, but whether a notice sent to his brother or to his friend, Jack, was adequate notice to him. This court is not restricted to construing the evidence most favorably to support the judgment but may draw its own legal conclusions from facts found or inferred in the judgment and is not bound by the trial court's findings. *Estate v.*

*Musgrove*, 144 Ariz. 168, 696 P.2d 720 (App.1985).

A.R.S. § 14–1401(A)(1), (2) provides that notice shall be given "to any interested person or his attorney" by a mailing "addressed to the person being notified" or delivery of a copy "to the person being notified." Thus, our statute requires personal notice. However, under Arizona case law, this type of notice is nonjurisdictional, so that the order is voidable but not void ab initio. Cf. *Ray v. Sommer*, 14 Ariz.App. 160, 481 P.2d 530 (1971).

■ The record reflects that William was not notified as required. Nevertheless, appellees contend, and the trial court found, that William had actual notice because he learned of the proceedings despite Emily's noncompliance with the notice procedure. We agree.

The question whether actual notice is sufficient arises in situations where the person to be notified received such notice but in a form or by a procedure that did not comply with the governing statute....

Restatement (Second) of Judgments, § 2, note to Comment *d*, (1982). The general rule is that one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice. *Larabee v. Washington*, 793 S.W.2d 357 (Mo. App.1990); *First National Bank v. Oklahoma Savings and Loan Board*, 569 P.2d 993 (Okl.1977).

The record shows that statutory notice was sent to Joe and Jack. The trial court did not believe Joe's testimony that he did not receive the notice. William is Joe's brother and he had the same address as Joe when notice was sent. In addition, William read most of Jack's mail to him because Jack cannot read. The trial court did not find credible William's testimony that he had not seen the notice. Credibility of witnesses is a matter peculiarly within the province of the trier of facts. *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App. 1981). We find there is sufficient evidence that William had actual notice of the January 6 hearing and failed to make an objection at that time.

## RES JUDICATA

■ The trial court found appellants' petition was untimely because they failed to appeal the May 1981 order. A.R.S. § 14–3412 makes that order final. It provides:

[A] formal testacy order ..., including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs....

Appellants argue that this statute is not applicable to their petition because the trial court erred by finding that the order implicitly makes a finding of intestacy because the petitions and order did not comply with the formal requirements and the court had never made a determination as to the will's validity. They specifically contend that Emily's petition did not formally seek an adjudication of intestacy according to A.R.S. § 14–3402(B); that the order does not indicate that it is one determining intestacy or recite that decedent died intestate; that there was never a determination by the court of the will's validity; and that the caption of the Letters of Acceptance signed by Emily say they are for a testate estate.

■ A formal proceeding under A.R.S. § 14–3401 may be one to secure a declaratory judgment of intestacy and determination of heirs in a case where no will has been offered. Uniform Probate Code (U.L.A.) § 3–401, comment (1983). The essence of Emily's application was a request for formal adjudication of intestacy, notwithstanding the caption, and it contained the statements required by A.R.S. § 14–3402(B). A judgment of intestacy need not recite magic words but is a decision upon the matters presented to the court. 49 C.J.S. Judgments, § 1 (1947). Absent a jurisdictional defect, the court's order determining intestate heirs was also a decision that the decedent died intestate

**328**

based on the application before the court, where no will was offered.

The fact that the caption of the letters of acceptance referred to testate estate is of no consequence where Emily, her counsel and the court treated the proceeding as one for intestacy. See *Estate of Polda*, 349 N.W.2d 11 (N.D.1984), (although court referred to an application for informal probate in order's recital of facts, proceedings were conducted as formal and the error was, therefore, immaterial).

■ Appellants' second contention as to why the order should not bind them is that the issues of Edna's testamentary capacity and validity of the will were not before the court.

The court's in rem order of Edna's status as intestate is binding on all the world, *Estate of Walton*, 164 Ariz. 498, 794 P.2d 131 (1990), with the statutory exceptions set forth in A.R.S. § 14–3412. It is res judicata as to all issues considered by the court, and every point raised by the record which could have been decided. *Fraternal Order of Police, Lodge 2 v. Superior Court*, 122 Ariz. 563, 596 P.2d 701 (1979). The 1981 order was not appealed, nor was a motion ever made to vacate it under Ariz.R.Civ.P. 60(c), 16 A.R.S., and it is not now subject to collateral attack. *Ray v. Sommer*, supra; *Barth v. Platt*, 55 Ariz. 241, 100 P.2d 589 (1940). Because that order was final, appellants' present action is barred by § 14–3412.

Because of our disposition of the foregoing issues, we need not discuss appellants' summary judgment argument.

The trial court's July 3, 1990 order is affirmed.

FERNANDEZ, C.J., and JAMES C. CARRUTH, Superior Court Judge,* concur.

---

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

Arizona Supreme Court Order filed July 25, 1990.